Argued September 11, reversed and remanded November 4, 1964

## McFADDEN *v.* McFADDEN ET AL

### 396 P. 2d 202

*Edwin J. Welsh,* Portland, argued the cause and filed briefs for appellant.

*Alexander T. Bishop,* Portland, argued the cause

for respondents. With him on the brief was John P. Ronchetto, Portland.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and Lusk, Justices.

GOODWIN, J.

This is an action to recover $10,000 alleged to have been wrongfully appropriated by the defendants. The plaintiff and her deceased husband held $10,000 in a joint bank account. Upon the death of her husband, the plaintiff came into possession of the $10,000 as the surviving owner of the bank account. In her complaint she alleged that the defendants wrongfully obtained the money from her.

The sole question in this case is whether a wife who is the surviving owner of a joint bank account is barred by a judgment in a former action between her late husband's personal representative and the defendants. In the first action, the personal representative and the defendants were rival claimants to assets which were in the exclusive possession of the husband at the time of his death. The $10,000 in controversy in the case at bar was not included in the amount sued for in the first case.

In the first action, it appeared that on the day the decedent died the defendants, who are the same defendants named in this action, went to a bank and by means of a forged check removed $10,000 from the decedent's personal bank account. The court found, however, that because the decedent had wrongfully appropriated $20,000 from a corporation in which all the parties had been interested, the defendants were equitably entitled to the $10,000 which they had ob-

tained by self-help. Consequently, the decedent's personal representative was denied recovery. He did not appeal.

In the action now before us, the wife contends that she is not bound by the judgment in the first action. As in the earlier case, the defendants obtained the $10,000 now being claimed by the wife by means that might be considered fraudulent. However, the defendants contend that this $10,000, like the other $10,000, was equitably theirs all of the time, and say that the judgment in the first action is conclusive upon that point.

In the case at bar, the trial court agreed with the defendants' contentions, and held that the plaintiff was barred by the judgment against her late husband's personal representative. The plaintiff appeals from a judgment n.o.v. for the defendants. The judgment n.o.v. followed automatically after the court held that in the former litigation the $10,000 claimed by the wife had been conclusively established as a part of her late husband's plunder from the corporation.

The plaintiff appeals upon the ground that she has never had her day in court. She points out that in the first case her husband's personal representative represented only her husband's estate, and not her personal interests. Furthermore, she points out that her $10,000 did not come to her from her husband's estate, but by survivorship as an incident of a banking transaction.

In the first case, the personal representative represented the decedent's creditors and estate. He did not represent the personal interests of the widow. 21 Am Jur 372, 375, Executors and Administrators §§ 6, 9 (1939). He employed his own lawyers, his own wit-

nesses, and his own theory of recovery. He planned his own strategy. The case was tried to the court without a jury. The court made findings of fact fatal to the personal representative's case. The personal representative elected not to appeal. The plaintiff in the case at bar was not a party to the first case, and had no control over the course of the litigation. Obviously, she had no right to appeal.

In the second case, using different lawyers, different witnesses, and a different theory of recovery, the plaintiff convinced a jury that upon the death of her joint-tenant husband she became entitled to the money in her checking account. (The judgment n.o.v. was entered after the trial, and after the legal arguments on the question of collateral estoppel had been addressed to the court alone.)

The concept of privity in collateral estoppel has often been discussed. See Note, *Developments in the Law—Res Judicata,* 65 Harv L Rev 818, 840-865, especially 855-856 (1952). See also Collins, *Collateral Estoppel in Favor of Nonparties: A Defendant's "Fringe Benefit",* 41 Or L Rev 30 (1961); 1 Greenleaf, Evidence 656, § 523 (16th ed 1899); 21 Am Jur 371-372, Executors and Administrators §§ 5, 6 (1939); 30A Am Jur 451-453, Judgments § 399 (1958).

Although the concept of privity has frequently been called upon as an aid in determining who should be bound by a judgment, "privity" is not of much use as an analytical tool. *Carter v. LaDee Logging Co.,* 142 Or 439, 18 P2d 234, 20 P2d 1086 (1933); see especially 142 Or 453 and 18 P2d 239. See *Wolff v. DuPuis,* 233 Or 317, 321-323, 378 P2d 707 (1963); *Taylor v. Sartorious,* 130 Mo App 23, 40-41, 108 SW 1089, 1094 (1908); 65 Harv L Rev at 856.

■ If any generalization about collateral estoppel is valid, it is that a court which is satisfied that the first litigation provided substantial protection of the rights and interests of the party sought to be bound in subsequent litigation will find that the parties have been "in privity." If the court is of the opinion that the first litigation did not afford proper protection to the rights of the person sought to be bound, then the court will hold that the parties have not been "in privity." Underlying all discussion of the problem must be the principle of fundamental fairness in the due-process sense. *Wolff v. DuPuis,* supra. At some point the public interest in reducing the volume of litigation must yield to a paramount interest in fair procedure. See Professor Currie's article, *Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine,* 9 Stan L Rev 281, at 288 (1957).

Discussing the situation in the instant case in terms of "derivative rights" is no more enlightening than discussing it in terms of "privity." Often the derivative nature of a right may depend upon how far back the inquirer chooses to look. In the instant case, the wife's interest in the $10,000 was derivative in the sense that she derived the money from her husband. However, the $10,000 may or may not have been derived from her husband's generosity to himself as a managing officer of a corporation. The particular $10,000 may have been corporate loot, or it may have been part of the husband's personal funds which were untainted by corporate irregularities. That matter has never been litigated in any proceeding in which this plaintiff was a party.

■ Even though, in a particular case, it may appear to be time-consuming and inefficient to allow a multiplicity of actions, we have found no authority to deny

a person a right to be heard upon important substantive questions when it is found that his interests were not represented in the former action. In the instant case, the plaintiff's rights were not before the court in the former adjudication. Consequently, it was error to apply the doctrine of collateral estoppel in the case at bar.

Because in this second case the defendants had the opportunity to present whatever defense they may have had, and since the jury passed upon all factual questions submitted to it, the judgment should have been entered upon the verdict.

Reversed and remanded.