**Florence PENNINGTON, Appellant,**

v.

**Lawrence SNOW and Michael Anthony Rimmer, Appellees.**

**No. 1101.**

Supreme Court of Alaska.

July 2, 1970.

Rehearing Denied Sept. 17, 1970.

---

James K. Tallman, Anchorage, for appellant.

Robert C. Erwin, Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, for appellees.

Before BONEY, C. J., DIMOND, RABINOWITZ, and CONNOR, JJ., and MOODY, Superior Court Judge.

## OPINION

BONEY, Chief Justice.

The appellant, Florence T. Pennington, and her husband, Earl Pennington, were

injured on June 27, 1965, when their car was struck from the rear by a car driven by appellee Michael Anthony Rimmer. As a result of the mishap, two suits were filed in the courts of Alaska, and two trials were subsequently held. In this appeal we are called upon to decide whether the conclusions reached at the first of the two trials should have a binding effect upon the outcome of the second trial by virtue of res judicata or collateral estoppel.

On November 14, 1966, Earl Pennington filed with the district court, Third Judicial District, a complaint against International Service Insurance Company, hereinafter called International. The complaint alleged that Earl Pennington was insured by the defendant company and that under the terms of the insurance policy International was obligated to make medical payments of up to $2,000 for each person involved in an accident in Pennington's car. The complaint further alleged that both Earl Pennington and his wife had incurred injuries in an accident while the policy was in force, and that both were entitled to recover the full amount of $2,000 from the defendant. According to the complaint, the defendant company had paid only $900 of the wife's medical expenses and $600 of the husband's, and was therefore liable for an additional amount of $2,500.

Trial was held before the district court[1] beginning June 22, 1967. As part of his case at that trial, Earl Pennington sought to establish that as a result of the accident his wife had suffered injuries to her abdo-men and urino-genital system, causing inflammation and bleeding; that this inflammation led to the spontaneous abortion of a six-month old fetus in December 1965; and that as a result of this injury, Mrs. Pennington was ultimately forced to undergo surgery. At the conclusion of the trial, the district court entered findings of fact and conclusions of law, ruling in favor of International and against Earl Pennington. The relevant portions of the district court's findings are as follows:

The evidence presented shows that the last menstrual period of Mrs. Florence Pennington as related to the treating and consulting physicians occurred on July 21, 1965; sometime between July 21, 1965 and August 4, 1965 Mrs. Florence Pennington became pregnant and the pregnancy occurred subsequent to the automobile accident of June 27, 1965; a small female fetus resulted from the spontaneous abortion on December 27, 1965, the fetus was in the developmental stage of approximately five months from the period of conception, and said spontaneous abortion or miscarriage was not causally connected or related to the accident of June 27, 1965.

The evidence presented by the plaintiff for medical expenses incurred within one year after the date of the accident was insufficient both as to the amount claimed and the dates incurred to support or justify a finding of additional claims for damages under the insurance

1. Although Art. I, § 16 of the Alaska Constitution provides for the right to a jury trial in such cases, apparently Earl Pennington's request for jury trial was not timely. Accordingly the district court trial was held without a jury.

Art. I, § 16 of the Alaska Constitution provides:

In civil cases where the amount in controversy exceeds two hundred fifty dollars, the right of trial by a jury of twelve is preserved to the same extent as it existed at common law. The legislature may make provision for a verdict by not less than three-fourths of the jury and, in courts not of rec-ord, may provide for a jury of not less than six or more than twelve.

Civ.R. 38 provides, in pertinent part:

\* \* \* \* \*

(b) Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue.

\* \* \* \* \*

(d) The failure of a party to serve a demand as required by this rule \* \* \* constitutes a waiver by him of trial by jury.

policy provisions covering medical expenses.

The district court concluded as a matter of law that International had fulfilled its obligations under the terms of the insurance policy, and that Earl Pennington was not entitled to recover any additional amounts for medical expenses.

Another suit resulted from the accident of June 27, 1965. This second suit was filed in superior court by Earl Pennington, Florence T. Pennington and Earl Pennington as special administrator for the Estate of Mary Ann Pennington, and named as defendants Lawrence Snow and Michael A. Rimmer. Although this suit was brought on March 29, 1966, several months before the filing of the suit against International, it was still in its pretrial stages when the district court delivered its ruling in Earl Pennington's suit against International.

The complaint filed in the superior court was divided into three counts. The first count set forth details of the June 27 accident. It further alleged that the car which collided with the Pennington vehicle was driven by defendant Michael A. Rimmer; that Michael A. Rimmer was acting as the agent or employee of defendant Lawrence Snow, the registered owner of the vehicle; that Michael A. Rimmer had been negligent in his driving of the vehicle; and that as a result of the negligence, Earl Pennington suffered damages in the amount of $50,000.

The second count of the complaint incorporated the allegations of the first, and in addition thereto alleged that Florence T. Pennington was a passenger in her husband's car when it was struck by the defendant's vehicle, and that

as a result of the collision she suffered certain injuries to her neck, back and spine. It was further alleged in count II of the complaint that Florence T. Pennington had been pregnant at the time of the accident and that she had "suffered injuries to her abdomen and in her urino-genital system resulting in bleeding and a subsequent premature birth of a child being carried by this plaintiff at the time of the injuries." Florence Pennington alleged that, as a result of the injuries suffered in the accident, she was entitled to recover general and special damages in the amount of $75,000.

The third count of the complaint incorporated the allegations of the first and second counts, and further alleged that on December 27, 1965, Florence T. Pennington gave birth to a premature child, Mary Ann Pennington, who expired due to her premature and weakened condition shortly after being born. It was also alleged that the premature and weakened condition of the child was the result of the June 27 accident and that Earl Pennington, as special administrator of the Estate of Mary Ann Pennington, was entitled to damages of $50,000.

While the issues raised in this complaint were awaiting trial in the superior court, the district court issued its ruling in the case involving Earl Pennington and International. On the basis of the district court's ruling, the appellees, Lawrence Snow and Michael A. Rimmer, raised a claim of res judicata and made a motion in the pending superior court case for partial summary judgment.[2] The appellees' motion was granted, and on April 18, 1968, the superior court issued a judgment granting the appellees summary judgment, on count III of the complaint.

---

2. The motion for partial summary judgment was made pursuant to Civ.R. 56. The relevant part of that rule provides:

\*    \*    \*    \*    \*

(b) A party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move for a summary

judgment in his favor as to all or any part thereof.

(c) \* \* \* Judgment shall be rendered forthwith if the pleadings, depositions and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. \* \* \*

On July 8, 1968, the appellees again moved for partial summary judgment, contending as before that the appellants were estopped by the district court ruling from relitigating certain issues raised in counts I and II of the complaint in the action before the superior court. The superior court again ruled in favor of the appellees, granting summary judgment on the portion of count I in which Earl Pennington sought to recover damages for expenses he incurred in providing funeral services for his daughter, Mary Ann, and on the section of count II in which Florence T. Pennington sought to recover damages for alleged injuries to her urino-genital system and the subsequent premature birth of her child. As before, the superior court's ruling was based on the conclusion that res judicata, or collateral estoppel, precluded Earl and Florence Pennington from relitigating issues previously adjudicated by the district court.

On October 2, 1968, a jury trial was commenced in superior court on the remaining issues of the complaint filed by Earl and Florence Pennington against the appellees. The trial culminated in verdicts favorable to both Earl and Florence Pennington, holding appellees Lawrence Snow and Michael A. Rimmer jointly and severally liable. The superior court entered a final "Memorandum Decision" in accordance with the verdict on December 19, 1968. From this judgment, Florence T. Pennington has appealed.

The principal point of error which the appellant raises centers upon the superior court's ruling on the appellees' motions for summary judgment, and questions the court's application of the principles of res judicata and collateral estoppel to the circumstances of the instant case. Since Florence Pennington has alone appealed, we need to consider the ruling of the lower court only insofar as it precluded the appellant from litigating the allegations made in count II of the complaint.

The effect of the doctrine of res judicata in civil proceedings was discussed by this Court in State v. Baker, 393 P.2d 893, 896–901 (Alaska 1964). There we pointed out:

> [Res judicata] bars a second suit between the same parties on the same subject matter resolving the same issues between the parties in the same capacity or quality. It is founded upon the principle that parties are not to be permitted to litigate the same issue more than once and that when a right or fact has been judicially determined by a court of competent jurisdiction or an opportunity for such trial has been given, the judgment of the court, so long as it remains unreversed, should be conclusive upon the parties and those in privity with them in law or estate. (Citations omitted.)

393 P.2d at 896–897. In *Baker* we also noted that, while the doctrine of res judicata is applicable only to suits involving identical causes of action, where a second action is upon a different cause, collateral estoppel will act to preclude from litigation any issues actually adjudicated in the previous action involving the same parties or their privies.[3] Here, since the suit brought by Earl Pennington in district court was upon a cause of action different from that involved in the superior court action,[4] the ruling of the district court could at most have acted to collaterally estop Florence Pennington from relitigating the issues which it decided.

The appellant argues the application of the rule of collateral estoppel to the facts of the present case was impermissible because of the traditional requirement of identity of parties. The usual statement of the identity of parties requirement is that a judgment has conclusive force only between persons who are parties to the ac-

---

3. Baker v. State, 393 P.2d 893, 897 (Alaska 1964).

4. *See* Larsen v. The M/V Teal, 193 F. Supp. 508 (D.C.Alaska 1961); 1B J. Moore & T. Currier, Moore's Federal Practice ¶ 0.410 [1] at 1157–58 (2d ed. 1965).

tion or in privity with them.[5] Broken down, this requirement may be seen to encompass two separate rules. There is, first, inherent in the identity of parties requirement the rule of privity, which states that the only persons *bound* by a judgment are those who are parties to the action or in privity with the parties.[6] Second, the doctrine of mutuality states that the conclusive effect of a judgment may be *invoked* only by those who were parties or privies to the action in which the judgment was rendered.[7]

In terms of the rule of privity, the appellant raises the point that since she was not a party to the action brought by her husband against International, she cannot be bound by the ruling of the district court. Because the appellant was not actually a party to the suit in the district court, our inquiry must be directed to the question whether she may properly be considered to have been in privity with her husband. The superior court's ruling granting partial summary judgment against the appellant was clearly based upon such a finding of privity.

The boundaries of privity have never been clearly defined. Early definitions tended to concentrate on the existence of concurrent or successive property interests to establish privity.[8] More recently, attempts have been made to isolate the various relationships which may serve as a basis for establishing privity.[9] But while

In Kamstra v. Bolles, 434 P.2d 539 (Alaska 1967), we adopted Restatement of Judgments § 84 as a basis for finding privity. these sources may indicate situations in which privity can generally be found to exist, the contours of the rule of privity remain flexible.

Judge Goodrich concurring in the case of Bruszewski v. United States, 181 F.2d 419, 423 (3rd Cir.1950), discussed privity in the following terms:

It is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata.

181 F.2d at 423.

A similarly broad view of the privity requirement was taken by the Supreme Court of Oregon in McFadden v. McFadden, 239 Or. 76, 396 P.2d 202, 204 (1964), where it was held:

Although the concept of privity has frequently been called upon as an aid in determining who should be bound by a judgment, "privity" is not of much use as an analytical tool.

If any generalization about collateral estoppel is valid, it is that a court which is satisfied that the first litigation provided substantial protection of the rights and interests of the party sought to be bound in subsequent litigation will find that the parties have been "in privity". (Citations omitted.)

396 P.2d at 204.

We are persuaded that the existence of privity must depend upon a finding that the first action provided substantial protection of the rights and interests of the non-party. In each case, then, the determination of whether privity exists must be made by an analysis of the relationship of the rights and interests of the parties to be held in privity. In the course of undertaking this analysis we are guided by the requirements of due process as set out by the United States Supreme Court in Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). Accordingly, before privity may be found to exist, the non-party must have notice and an opportunity to be heard; the

---

5. *Id.* ¶ 0.411 [1] at 1251.

6. *Id.*

7. *Id.*

8. *See* Comment, Nonparties and Preclusion by Judgment: The Privity Rule Reconsidered, 56 Calif.L.Rev. 1098, 1102 (1968).

9. *See*, for example, Restatement of Judgments § 83, comment *a* at 389 (1942); 1B J. Moore & T. Currier, Moore's Federal Practice ¶ 0.411 [1] at 1255 (2d ed. 1965).

procedure must insure the protection of the rights and interests of the non-party, and he must in fact be adequately represented by the parties. The extent to which the interests of the non-party are identical to those of the parties of the action provides a gauge for the determination of the adequacy of representation.

■ In this case, it is sufficient for us to refer to the language used by the superior court in finding that privity existed:

> In the District Court action, not only was Mrs. Pennington represented by her husband under the insurance policy, but Mrs. Pennington had knowledge of that action and participated therein as a witness on behalf of the plaintiff in support of the allegations for medical expenses. Her husband's action against the insurance company sought recovery for her, as an insured under the policy, up to the $2,000 limit to which she was entitled to under the policy. Accordingly, I find that Florence Pennington was in privity with Earl Pennington in the proceedings in District Court in Cause No. 66–2968 and that she is, accordingly, estopped from having the issue of proximate cause of the miscarriage and abortion which she subsequently endured tried again.

In the circumstances of this case there does not appear to be any reason to assume that there was any adversity of interests between the appellant and her husband in the district court trial.[10] Accordingly we affirm the conclusion reached by the superior court that the appellant was in privity with her husband in the district court proceedings.

We must next turn to a consideration of the doctrine of mutuality. The appellant argues that notwithstanding the determination of the privity issue, the appellees could not properly invoke the rule of collateral estoppel against her because they were not parties to the proceedings in the district court. Were we to apply the conventional rule of mutuality to this case, the appellant would prevail on this point; but it is a question of first impression in Alaska whether this much criticized rule [11] will be applied. Almost 30 years ago California abandoned the senescent rule of mutuality in the landmark case of Bernhard v. Bank of America, 19 Cal.2d 807, 122 P. 2d 892 (1942). Justice Traynor, writing the opinion in *Bernhard*, stated:

> The criteria for determining who may assert a plea of res judicata differ fundamentally from the criteria for determining against whom a plea of res judicata may be asserted. * * * There is no compelling reason * * * for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation.

---

10. See the discussion on this point in Comment, Nonparties and Preclusion by Judgment: The Privity Rule Reconsidered, *supra* n. 8, at 1115–18.

We are aware that the courts of many jurisdictions hold that no privity arises from the marital relationship. 1B J. Moore & T. Currier, Moore's Federal Practice ¶ 0.411 [11] at 1660 (2d ed. 1965). We agree with this rule insofar as it stands for the proposition that a marital relationship will not in itself be sufficient to establish privity; however, we feel that the existence of a marital relationship may be a factor relevant to the determination of whether the rights of a non-party have been adequately represented by a party to litigation.

*See* Friedenthal v. Williams, 271 F. Supp. 524 (E.D.La.1967); Fleming v.

Cooper, 225 Ark. 634, 284 S.W.2d 857, 860–861 (1955). *But see* Wolff v. Du Puis, 233 Or. 317, 378 P.2d 707, 710 (1963).

11. The mutuality requirement was severely criticized more than a century ago by Jeremy Bentham, who wrote:

There is reason for saying that a man shall not lose his cause in consequence of the verdict given in a former proceeding to which he was not a party; but there is no reason whatever for saying that he shall not lose his cause in consequence of the verdict in a proceeding to which he *was* a party, merely because his adversary was not.

Bentham, Rationale of Judicial Evidence, in 7 Works of Jeremy Bentham 171 (Bowring ed. 1843).

No satisfactory rationalization has been advanced for the requirement of mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend. Many courts have abandoned the requirement of mutuality and confined the requirement of privity to the party against whom the plea of res judicata is asserted. The commentators are almost unanimously in accord.

\* \* \* \* \* \*

In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? (Citations omitted.)

122 P.2d at 894–895.

■■ Since the decision of *Bernhard*, the trend toward abandonment of the mutuality requirement has frequently been noted.[12] Although some commentators continue to favor the requirement,[13] we are inclined to agree with the holding in *Bernhard*, and thus hold that mutuality of estoppel will not as a rule be necessary for the invocation of res judicata or collateral estoppel against a party. But our abandonment of the requirement as a rule does not mean that mutuality will in all cases be unnecessary. As the court in United States v. United Air Lines, Inc., 216 F. Supp. 709 (E.D.Wash., D.Nev.1962), noted:

The rule of non-mutuality is not a general one but a limited one to be determined from the facts and circumstances in each case whether or not it should be applied.

216 F.Supp. at 726. Thus, while we hold that mutuality will not be required *as a rule*, it remains to be inquired, in each case, whether there were any unusual or exceptional factors in the prior adjudication which would warrant the application of the mutuality requirement. If the particular circumstances of the prior adjudication would make it unfair to allow a person who was not a party to the first judgment to invoke res judicata or collateral estoppel then the requirement of mutuality must still be applied.

In the present case, then, we must determine whether any factors exist which should preclude the appellees from invoking the district court judgment to bind the appellant. Clearly, this is not the type of case where the application of collateral estoppel would lead to an anomalous result; moreover, both here and in the district court case, the appellant acted as a plaintiff.[14] However, several factors have convinced us that in this case the appellees should not have been allowed to invoke the judgment of the district court against the appellants.

---

12. *See,* for example, Maryland for Use of Gliedman v. Capital Airlines, Inc., 267 F.Supp. 298, 303–304 (D.Md.1967); United States v. United Airlines, Inc., 216 F.Supp. 709, 725–729 (E.D.Wash., D.Nev.1962).

For an extensive list of cases and law review articles reflecting the various positions adopted by state and federal court on the question of mutuality, *see* 1B J. Moore & T. Currier, Moore's Federal Practice ¶ 0.412 [1] at 1803–12 (2d ed. 1965).

13. *See* J. Moore & T. Currier, Moore's Federal Practice, *supra* n. 12.

14. It has been argued that the requirement of mutuality should be applied in certain situations where invocation of *res judicata* or collateral estoppel would lead to anomalous results. It has further been argued that, where the party to be bound by *res judicata* was the defendant, or non-aggressor, in the first litigation, the application of the mutuality requirement is necessary to avoid injustice. *See* Currie, Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine, 9 Stan.L.Rev. 281 (March 1957). We need not rule on this difficult situation since it is not raised in the instant case.

We think the fact that the appellees here seek to bind the appellant to a district court ruling in a superior court case is significant. District courts in Alaska are limited to jurisdiction in civil matters to cases involving amounts under $3,000.[15] The proceedings of the district courts are geared to the consideration of such smaller claims, and for this reason cases move more rapidly through the district courts than through the superior courts. In the present case this is attested to by the fact that, although the superior court action was the first to be filed, trial was held in the district court case well in advance of the date of trial in superior court. Under these circumstances, then, the fact that the district court's decision was rendered first can hardly be interpreted as an indication that the district court was the forum chosen by the appellant or her husband as the most opportune and appropriate for the conclusive adjudication of the issues stemming from the accident.

It must further be considered that the amount at stake in the district court case was far less than amounts involved in the superior court action.[16] If we were to hold the findings of the district court conclusive in this case, we would in effect be binding the appellant to accept the consequences of a suit in which she had less time to prepare her case and less incentive to adjudicate all of the issues to the fullest extent.

Under these circumstances, then, we feel that the desirability of ending litigation must be subordinated to the necessity to allow the appellant to have a full and fair adjudication of her claims against Lawrence Snow and Michael A. Rimmer. We thus hold that because the appellees were not parties to the action in the district court, they should not have been permitted to raise the claim of collateral estoppel against the appellants.[17]

The appellant further charges as error the introduction of certain expert testimony at the trial. Because of our holding on the issue of collateral estoppel, we need not consider this argument. The decision of the superior court granting partial summary judgment to the appellees on count II of the complaint in this matter is reversed. The case is remanded with the instruction that a new trial be granted the appellant.

It is our view that the issue of liability of the appellees is separable from the issue of damages and that it has been adequately resolved. See City of Fairbanks v. Nesbett, 432 P.2d 607, 618 (Alaska 1967). However, the extent of injury to the appellant's urino-genital system, unlike the issue of liability, cannot readily be severed from other elements of damage incurred by the appellant. Consideration of the issue of damages to the appellant's urino-genital system in isolation of other injuries would deprive a jury on retrial of an overview of

15. AS 22.15.030 provides in relevant part:
      (a) The district court has jurisdiction of civil cases and proceedings as follows:
      (1) for the recovery of money or damages when the amount claimed exclusive of costs, interest and attorneys' fees does not exceed $3,000. * * *

16. We must note that there is no possibility here that the appellant obtained jurisdiction in superior court by merely raising the amount of her claimed damages. In this case, the superior court action was filed before the filing of the district court suit. Also, the appellant sought to recover general damages in superior court, while the district court action, stemming from a contract of insurance, alleged only liability for medical expenses actually incurred. Thus, in

holding as we do today, we in no way intimate that an unsuccessful litigant may escape the effects of res judicata by merely raising his claim of damages.

17. Our holding in the present case is in no way intended to reflect upon the accuracy or the conclusiveness of findings made in district court actions; nor do we imply that judgments rendered by the district courts will never be entitled to the force of res judicata in subsequent superior court proceedings. Rather, our decision stands only for the assertion that in this particular instance, the relative timing of the district and superior court cases as well as the disparate amounts of money involved therein would make it unfair to bind the appellant to the conclusion reached in the district court action.

the totality of damages suffered by the appellant, and would thereby give rise to the danger of either an incomplete or an overlapping award. Consequently, upon retrial the entire issue of damages suffered by the appellant shall be reconsidered, but the liability of the appellees shall not be in issue.

MOODY, Superior Court Judge (concurring in part and dissenting in part).

I dissent on the question of the requirement of mutuality. Apparently what the majority holds is that mutuality will not be required in all cases for the application of the doctrine of res judicata, but that each proposed use of the requirement will be examined on its merits to determine its desirability. In so doing, the majority follows Bernhard v. Bank of America National Trust and Savings Association, 19 Cal.2d 807, 122 P.2d 892 (1942) in so far as it holds that mutuality is not always a requirement for res judicata to be operative and follows the rule in United States v. United Air Lines, Inc., 216 F.Supp. 709 (E.D.Wash., D.Nev.1962) in holding that:

> The rule of non-mutuality is not a general one but a limited one to be determined from the facts and circumstances in each case whether or not it should be applied. 216 F.Supp. at 726.

With this portion of the decision I agree. However, I cannot agree with the application of the rule in this case.

Without a showing in the Superior Court to the contrary, we should not assume that the issue concerning causation of the spontaneous abortion would have been resolved in another way had Snow and Rimmer been actual parties to the action in District Court. I cannot agree with the majority's apparent assumption that the Penningtons would have put on more or better evidence or that their attorney would have been more tenacious in his proof of fact had Snow and Rimmer been parties to the action. It is true that while the Penningtons were seeking to recover $2,500.00 in the District Court action they were seeking to recover $75,000.00 in Count II and $50,000.00 in Count III in the Superior Court. However, the mere fact of the difference between the prayer clauses does not give rise to the assumption of a lower standard on the part of the trial attorney in the District Court.

I do not believe that the fact that the issue of causation was determined in the District Court rather than in a superior court is a relevant consideration in determining whether or not the issue is res judicata. The District Court is just as competent to determine questions of fact as is any other court.

I would hold that res judicata should preclude the Penningtons from re-litigating the issue of causation.

I would affirm the Superior Court's decision.