**Fern PALFY, Appellant,**

**v.**

**The FIRST BANK OF VALDEZ, Appellee.**

**No. 1122.**

Supreme Court of Alaska.

July 2, 1970.

Peter B. Walton, Anchorage, for appellant.

Kenneth McCaskey, Robison, McCaskey, Strachan & Hoge, Anchorage, for appellee.

Before BONEY, C. J., DIMOND, RABINOWITZ, and CONNOR, JJ., and FITZGERALD, Superior Court Judge.

## OPINION

BONEY, Chief Justice.

Appellant, Fern Palfy, contends that she was wrongfully deprived of her day in court when the superior court directed a verdict in favor of the appellee, The First Bank of Valdez. The superior court judgment from which this appeal was taken is based upon a finding of res judicata or collateral estoppel. Because the lower court's judgment seems to have been, to some extent, the product of confusion as to the background of this case, a careful review of the facts will greatly advance a resolution of the problems raised on appeal.

At some time during the spring of 1962, Julian Rice, acting on behalf of a partnership comprised of himself, William Emmal, and Thomas Jatzeck, d/b/a Prince William Sound Fisheries, contacted Mrs. Palfy regarding the possibility of procuring a loan. The Prince William Sound Fisheries partnership will be referred to as

the Partnership in the balance of the opinion. Money was required by the Partnership to purchase and operate a cannery in Valdez. Following a period of discussion, the appellant reached agreement and loaned the Partnership $30,000 for the purchase and operation of the cannery.

In May 1962, the Partnership entered into a contract with The First Bank of Valdez for the purchase of a cannery building, including certain fixtures and equipment. Pursuant to this agreement, the Bank relinquished its claims to real property or tidelands surrounding the building which might subsequently become available for purchase from the United States or the State of Alaska. The contract called for a purchase price of $16,500; an initial payment of $3,000 was required and the balance, including interest at the annual rate of 6%, was to be paid in regular installments.

Apparently, the Partnership made improvements and repairs to their newly purchased building and began to operate the cannery as a business; however, due to unforeseeable economic conditions the business failed. Faced with the prospect of failure, the Partnership entered negotiations with Mrs. Palfy concerning the repayment of the $30,000 which she had loaned. These negotiations ultimately led to identical agreements, between the appellant and each of the three members of the Partnership. According to the terms of these agreements, the appellant released the $30,000 debt owed to her by the Partnership; in exchange for release of the debt, the Partners assigned to the appellant their rights under the previously mentioned contract of sale with The First Bank of Valdez. After these agreements were entered into, Mrs. Palfy made certain delinquent payments on the cannery to The First Bank of Valdez, and had the cannery building insured.

Upon learning that the contract of sale for the cannery had been assigned by the Partnership to the appellant, the Bank—for reasons not disclosed in the record—sought to negotiate directly with Mrs. Palfy a new contract for the remaining amounts due on the cannery. Accordingly, the Bank prepared a "Conditional Sales Contract" naming itself as vendor and Fern Palfy as vendee of the cannery, and stating a purchase price of $11,335.61, which was apparently the amount still due to the Bank under its contract with the Partnership. Testimony below showed that at some time on March 27, 1964, the president of The First Bank of Valdez signed the contract and mailed it to Mrs. Palfy's lawyer, who forwarded it to Mrs. Palfy in California, where she was residing at that time. The contract was signed in California by Mrs. Palfy and eventually returned to Alaska, where it was notarized on May 11, 1964.

One detail remains to be added to the factual backdrop of this appeal: On the afternoon of March 27, 1964—the same day that The First Bank of Valdez mailed it's "Conditional Sales Contract" to Mrs. Palfy—the great Alaska earthquake rumbled through the tidelands of Valdez, sending the cannery to the depths of Prince William Sound.

At this point it will be appropriate to take stock of the transactions that have been discussed. It is manifest that two separate contracts are involved here. There is, first, the contract between the Partnership and The First Bank of Valdez, through which the Partnership purchased the cannery. This contract was assigned to Mrs. Palfy in exchange for her release of the $30,000 partnership debt. We will henceforth refer to this as the Partnership Contract. The second contract to emerge in this case was the "Conditional Sales Contract" drawn up by The First Bank of Valdez after the assignment of the Partnership Contract to Mrs. Palfy. The "Conditional Sales Contract" attempted to establish a direct contractual relationship between Mrs. Palfy and the Bank by naming the Bank as vendor and Mrs. Palfy as vendee of the cannery. This second con-

tract will be referred to simply as the Bank Contract.

The destruction of the cannery by the Alaska earthquake was the precipitating factor in the legal battles which culminated in this appeal. At some time after Mrs. Palfy learned of the destruction of the cannery, she brought suit against Julian Rice, one of the members of the Partnership. Mrs. Palfy alleged, in part, that Rice owed her $30,000 from the loan which she had made to the Partnership for the purchase of the cannery. Rice defended by asserting that the $30,000 loan had been released, and that the release was supported by valuable consideration, i. e., the assignment of the Partnership Contract to Mrs. Palfy.

On September 23, 1968, Mrs. Palfy's suit against Rice came up for trial in the superior court, Fourth Judicial District, at Fairbanks. Palfy v. Rice, No. 65–15 (Alaska Super., Ct. 4th Dist., Dec. 13, 1968). On December 9, 1968, the court entered findings of fact and conclusions of law, holding that Rice was not liable to Mrs. Palfy for the loan. The basis for the court's ruling was a finding that Mrs. Palfy had released the $30,000 debt in return for the assignment to her of the Partnership Contract. The portion of the superior court's findings of fact relevant to this appeal provided:

\* \* \* \* \* \*

7. On or about the 9th day of September, 1963 \* \* \* Fern Palfy \* \* \* did execute in favor of the Defendant, Julian C. Rice, a certain release of liability for said [$30,000] debt called an "Agreement".

\* \* \* \* \* \*

11. The Court finds that said release was executed with consideration. The evidence shows:

A. That the Plaintiff received (1) assignment of partnership contract with First Bank of Valdez and (2) including inchoate title to tide land properties ultimately perfected by Fern Palfy, evidenced by use of Defendant's said contract in application for tide lands and a patent to said tide lands issued to the Plaintiff.

B. The Court finds that the Plaintiffs received the benefit of all improvements placed in said cannery building by the said partnership with the use of the money theretofore borrowed by the partnership from the Plaintiffs.

C. The Court finds that the Plaintiffs later caused to be recorded, the instruments heretofore referred to as agreements or releases and thereby did affirm their bargain and by and through the affirmance of their bargain did obtain the right to receive and did in fact receive a SBA disaster loan authorization in excess of $181,000.00 (the appraised value of the cannery) from the United States of America arising out of the earthquake of 1964.

\* \* \* \* \* \*

13. The Court therefore finds:

A. That the debt contracted for by the defendant with the plaintiffs was fully and fairly released;

B. That said release was supported by adequate consideration; and

C. That the plaintiffs by their affirmance of said acts and deeds, and by the receipt of advantages therefrom, are forever estopped to deny the validity of said releases.

14. The Court further finds that the Plaintiffs by their affirmance of said acts and by receipt of the advantages arising out of said acts heretofore referred to make it impossible for the Court to return the parties to the status quo and Plaintiffs are therefore likewise forever estopped from asserting the invalidity of the execution of said releases. (Citations omitted)

The action by Mrs. Palfy against Julian Rice was not the only suit resulting from the loss of the cannery building. It appears that Mrs. Palfy made no payments to The First Bank of Valdez on the Bank Contract. Accordingly, on June 28, 1967,

the Bank filed suit against her to recover the full contract price of $11,335.61, plus interest. It is essential to note that in its complaint the Bank alleged only that Mrs. Palfy was liable to it under the terms of the Bank Contract. There was no assertion in the Bank's complaint that Mrs. Palfy was independently liable by virtue of the assignment to her of the Partnership Contract; in fact, there was no mention at all of the Partnership Contract. Mrs. Palfy answered alleging that the Bank's complaint failed to state a cause of action and that, by reason of the destruction of the building, there was a total failure of consideration.

The Bank's case against Mrs. Palfy came up for trial in February 1969, in the superior court, Third Judicial District, in Anchorage. Before Mrs. Palfy was allowed to put on her defense, the court admitted into evidence the findings and judgment from the previously decided case of Palfy v. Rice, *supra*. After hearing discussion of counsel on both sides, the court ruled that the holding in Palfy v. Rice was controlling and estopped Mrs. Palfy from denying liability to the Bank under the terms of the Bank Contract. The court then directed the verdict in favor of the Bank. The findings of fact entered by the court on February 25, 1969, amply demonstrate that the basis for the court's ruling was a finding of collateral estoppel:

> [T]he Court, out of the jury's presence, admitted plaintiff's Exhibit No. 41 for the reason that material issues in the case at bar had already been litigated in Cause No. 65–15, Fourth Judicial District. The Court found then and now finds that Judge Sanders determined in Cause No. 65–15 that there was a valid and binding contract between Fern Palfy and The First Bank of Valdez and that the defendant Fern Palfy received considerations arising out of and by virtue of that contract.

The relevant portion of the court's conclusions of law provided:

\* \* \* \* \* \*

> 2. That by virtue of the Findings of Fact, Conclusions of Law and Judgment entered in Cause No. 65–15, Fourth Judicial District, defendant is estopped to deny that there was a contract between plaintiff here and defendant here, and defendant here is also estopped to deny that defendant received consideration by virtue of that contract.

Mrs. Palfy now appeals this decision, contending that the application of collateral estoppel to the circumstances of her case was erroneous.

It is well settled that res judicata will bar a second suit between the same parties on the same cause of action. Collateral estoppel, an outgrowth of res judicata, prevents a person from relitigating issues actually determined in a previous action to which he was a party. State v. Baker, 393 P.2d 893, 896–897 (Alaska 1964).

Mrs. Palfy first contends that The First Bank of Valdez should not have been allowed to invoke the judgment of the superior court in Palfy v. Rice, *supra*, against her because the Bank was not a party to that litigation. In our recent holding in Pennington v. Snow (Alaska, 471 P.2d 370 1970), we abandoned the application of the requirement of mutuality as a rule. In *Pennington*, we stated that mutuality would be required only in those cases where exceptional circumstances existing in the previous litigation would make it unfair to allow a non-party to invoke the previous judgment in a second action. Unlike the *Pennington* case we can find nothing here to warrant requiring mutuality. It is not contended, nor does it appear, that any particular circumstances in Palfy v. Rice would justify our limiting the rule of collateral estoppel in the present case by restricting the parties who may invoke the prior judgment. In short, there is simply no reason here to prevent The First Bank of Valdez from invoking collateral estoppel against Mrs. Palfy merely because the

Bank was not a party to the previous action.

 It is next contended that the application of collateral estoppel here was incorrect because the issues raised in the Bank's suit against Mrs. Palfy are not the same as those raised in the previous suit of Palfy v. Rice. We begin with the initial observation that the judgment of the court in Palfy v. Rice, because it was upon a cause of action different from the one involved here, can work at most as a collateral estoppel against Mrs. Palfy. See Pennington v. Snow, *supra*; Treat v. Ellis, 253 F. 484 (9th Cir. 1918).

 The function of the doctrine of res judicata has been concisely summarized by Professor Moore:

> The policy underlying the doctrine of res judicata is the objective of judicial finality, 'to secure the peace and repose of society by the settlement of matters capable of judicial determination,' so that there shall be a termination of litigation and the participants not vexed twice for the same cause. (Footnotes omitted)

1B J. Moore, Federal Practice ¶0.405[2], at 631 (2d ed. 1965). But the policy of finality underlying res judicata and collateral estoppel must be tempered by our paramount concern that a party be afforded his day in court. Thus, in the application of the rule of collateral estoppel, we must constantly guard against unduly extending the scope of a prior ruling to matters not actually litigated and decided. Luisi Truck Lines, Inc. v. Washington Utilities & Transportation Commission, 72 Wash.2d 887, 435 P.2d 654, 659 (1967). Consequently, in this case Mrs. Palfy can be precluded from relitigating only those issues of fact which were actually adjudicated in the prior action.

Turning, then, to the decision in Palfy v. Rice, we must conclude that Mrs. Palfy is correct, and that the issues decided in the previous case are not determinative of those raised in the instant case. Our conclusion may be reached by way of two alternative courses. First, it appears from the record that, contrary to the opinion expressed by the court below, Mrs. Palfy's liability to the Bank has never been litigated. The superior court in Palfy v. Rice held that Mrs. Palfy effectively released the debt owed to her by Rice. In so holding the court ruled that the assignment of the Partnership Contract to Mrs. Palfy constituted valid consideration for the release of the debt. Clearly, what was adjudicated by the ruling in Palfy v. Rice was only the validity of the assignment of the Partnership Contract. No issue was raised as to the liability of either the Partnership or Mrs. Palfy to The First Bank of Valdez under the terms of the Partnership Contract. The ruling of the court in Palfy v. Rice, then, was concerned solely with the rights and liabilities as between Mrs. Palfy and the Partnership, and therefore cannot be used to estop Mrs. Palfy from raising defenses against liability to the Bank.

But there is a second, equally persuasive reason for holding that the judgment of the court in Palfy v. Rice should not control the instant case. In the present case, The First Bank of Valdez alleged liability of Mrs. Palfy to it on the sole basis of the Bank Contract. The defenses which Mrs. Palfy sought to raise were responsive to the Bank's complaint, and were thus directed toward showing only the invalidity of the Bank Contract. Assuming for the moment that the holding in Palfy v. Rice settled the question of Mrs. Palfy's liability to the Bank, this question was resolved only in terms of the Partnership Contract. In other words, if the previous adjudication found Mrs. Palfy liable to The First Bank of Valdez for the purchase of the cannery building, it did so pursuant to the terms of the Partnership Contract. Yet no question has been raised here as to the liability of Mrs. Palfy under the assignment to her of the Partnership Contract. Instead, the Bank has chosen to sue only upon the subsequent Bank Contract. The Bank Contract is a separate and distinct contract and as such it raises issues of validity independent of those raised by the Partnership Contract.

It is true that in reaching its conclusion the court in Palfy v. Rice made certain specific findings as to the benefits which Mrs. Palfy derived from the assignment to her of the Partnership Contract. Thus, for example, it was found that Mrs. Palfy used the Partnership Contract to procure a patent to certain tidelands; it was also found that Mrs. Palfy used the assignment to her of the Partnership Contract to receive a SBA loan. In accordance with our holding on the issue of mutuality, Mrs. Palfy would, of course, be estopped from denying that she engaged in the particular conduct attributed to her by the court. However, there is no indication here that Mrs. Palfy has sought to controvert these specific findings.

It would be possible to speculate endlessly about Mrs. Palfy's conduct and about its effect on her liability to the Bank under the terms of the Bank Contract. It is conceivable that Mrs. Palfy has acted in some way which would overcome any defenses she might establish to liability under the terms of the Bank Contract. Yet this is the issue which has never been tried; and it is, we take it, precisely the issue which Mrs. Palfy seeks to have tried. Accordingly, we hold that the ruling in Palfy v. Rice did not adjudicate the issues raised in the instant case, and therefore Mrs. Palfy was denied her day in court against the appellee.

■ The appellant also asserts that the trial court improperly introduced into evidence a certified copy of an instrument recorded in Valdez purporting to assign certain stock to The First Bank of Valdez. The copy was admitted under the theory that it was relevant to show the Bank's ownership of the cannery building at the time of the Bank Contract. Because this case must be retried, and since the directed verdict below prevented the development of a full record, we feel that it would be inappropriate to rule at this time on the relevance of the instrument. However, the appellant argues that the introduction of a copy of the recorded instrument was also improper because the recorded instrument was not itself an original, but rather a typed copy thereof. There was much discussion between counsel and the court about the circumstances surrounding the recording of the original assignment of stock and the likelihood that the original instrument had been destroyed; but no testimony was actually introduced to support the claims made to this effect by counsel for the Bank.

Civil Rule 44(b) (6) is applicable to this situation, and provides:

Unless otherwise ordered upon good cause shown, the parties will be limited to certified copies of originals in making proof of instruments recorded in the office of the recorder of any recording district in the state * * * provided, that if an original instrument is no longer a part of the records and files of such recorder * * * such original instrument may be used in evidence.

Here, we need not pass upon the question of whether the admission of the certified copy would have been within the discretion of the trial court had the assertions made by counsel for the Bank been true. The point is simply that in admitting the copy of the assignment of stock on the sole basis of the assertions made by the Bank's counsel, the court below did not allow a showing of good cause to be made. Thus, we think that upon retrial it would be best for the court to allow witnesses to be examined under oath on the question of the whereabouts of the original assignment of stock, and the circumstances of its recordation. It will then be possible for the court to consider the question of admissibility on the basis of the proper foundation.

The decision of the trial court is reversed and the case is remanded for trial consistent with this opinion.