212 N.J. Super. 399 (1986)
515 A.2d 271
KATHRYN L. MOORE, PLAINTIFF,
v.
JAMIL HAFEEZA, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Somerset County.
Decided July 29, 1986.
*400 Stephen F. Juman for plaintiff (Juman & Juman, attorneys).
John M. Palm for defendant (Garrigle, Chierici, Palm & Wright, attorneys).
IMBRIANI, J.S.C.
On June 9, 1969 plaintiff, Kathryn Moore, gave birth to a child out of wedlock and applied for welfare support. She claimed that defendant, Jamil Hafeeza, was the father of her child and, as was the procedure at that time, the Somerset County Board of Social Services (hereafter board), not plaintiff, filed a complaint in the Somerville Municipal Court against Jamil Hafeeza alleging that he was the father of the child and should be compelled to support the child. He denied paternity.
A trial was held in the Somerville Municipal Court in which the board and defendant were both represented by independent *401 counsel. There is no transcript available of the hearing but the jacket of the file indicates that plaintiff, defendant and an independent witness testified and the results of a blood test were introduced as evidence. There is a recorded disposition on August 10, 1971 of "No Filiation" and a notation on the file that an order of judgment was signed by the municipal court judge on August 24, 1971. No appeal was ever taken.
In January 1986  almost 15 years after the decision by the Somerville Municipal Court  plaintiff (who was not a named party, but a witness in the 1971 proceeding) filed this suit in the Superior Court of New Jersey, Chancery Division-Family Part again alleging that defendant is the father of her daughter, Stacey Trent Moore, now 16-years of age and should support the child.
Defendant again denies paternity, and also asserts that plaintiff's claim is barred under the doctrines of double jeopardy, res judicata, equitable estoppel and laches. Moreover, defendant asserts, this really is a motion for a new trial under R. 4:50-1 et seq., to set aside a judgment that is 15-years old. Plaintiff argues that she is not barred from bringing this action because she was not a litigant in the 1971 trial.
The crux of plaintiff's claim is that there is now available what she describes as "newly discoverable evidence," namely the results of a human leucocyte antigen (HLA) test, which was not available in 1971. She asserts that she has never had her day in court to prove paternity and should not be barred by the action instituted by the board. The HLA test first became available in the late 1970's and is accepted by the scientific community as a reliable and accurate test for the exclusion of paternity. Malvasi v. Malvasi, 167 N.J. Super. 513 (Ch.Div. 1979). It is accepted as being over 99% accurate.
Defendant first contends that plaintiff's complaint is quasi-criminal in nature and is barred by the double jeopardy provision of the Fifth Amendment of the United States Constitution. As a general rule, the prohibition against subjecting an *402 individual to double jeopardy for the same offense applies only to criminal and quasi-criminal prosecutions. State v. Gerstmann, 198 N.J. Super. 175, 179 (App.Div. 1985). Therefore, the double jeopardy clause would not apply in a filiation suit (referred to previously as a bastardy case) because such proceedings are essentially civil in nature.
Bastardy is not a crime in New Jersey. A proceeding against a putative father is essentially a civil, not a criminal one. As indicated above, the primary objective is to compel the father who begot the illegitimate child to assume the duty of supporting it and secondarily to relieve the public of that obligation. [citations omitted] An adverse verdict on the issue of paternity does not establish a criminal record against the father. [State v. Clark, 58 N.J. 72, 78 (1971)]
Accordingly, the defense of double jeopardy is not available to defendant.
Defendant next asserts the affirmative defenses of res judicata and collateral estoppel. The doctrines of res judicata and collateral estoppel involve the effect of a judgment in a subsequent independent legal proceeding, and should not be confused with the doctrine of estoppel which involves conduct of, or a representation made by, a person. See 46 Am.Jur.2d, Judgments, §§ 398-399.
Literally, res judicata means a matter adjudged.... [It is] an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, [and] is conclusive of causes of action and of facts or issues thereby litigated as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. [46 Am.Jur.2d, Judgments, § 394]
Although we are dealing with the earlier decision of a municipal court, it is clear that a judgment of a court of inferior or limited jurisdiction is a bar to another suit between the same parties under the doctrine of res judicata so long as the lower court properly had jurisdiction of the action before it. Domestic & Foreign Petroleum Co. v. Long, 4 Cal.2d 547, 51 P.2d 73 (1935). It is undisputed that in 1971 the municipal court had jurisdiction of bastardy complaints. On the other hand, the doctrine of collateral estoppel provides that "once a court has decided an issue of fact or law necessary to its judgment, that *403 decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first cause." Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).
Both doctrines are intended to give finality to some court action. As Professor Austin W. Scott said:
matters actually litigated and determined in the prior action cannot be relitigated in [a] later action ... [because] a party who has once fought out a question in litigation with the other party is precluded from fighting it out again. [Scott, "Collateral Estoppel by Judgment," 56 Harv.L.Rev. 1, 3 (1942)].
Obviously these doctrines could preclude a party from showing what is or could be the truth. And one must ask why should this be allowed to occur under a system of justice which prides itself as being dedicated to finding the truth?
The answer is based upon public policy. The interests of the state and of the parties require the putting of an end to controversies. One way of ending controversies is to preclude the bringing of an action after a period of time has elapsed, and thus a perfectly valid claim may be barred by a statute of limitations or by laches. The policy against relitigation is even stronger. [Id. at 1]
A party who has received a fair and complete opportunity to litigate an issue has received all to that which he is entitled. To permit him to relitigate the very same issue again would not only result in the dissipation of court and judicial resources and possible harassment of litigants, Jones v. Mitchell Bros. Truck Lines, 544 P.2d 1039, 1041 (Or. 1976), but could result in two diametrically opposed verdicts and expose the law to inconsistent decisions on the same set of facts.
It is well settled that the doctrine of res judicata, which admittedly is an amorphous term, Weiner v. Greyhound Bus Lines, Inc., 389 N.Y.S.2d 884, 55 A.D.2d 189 (1976), is binding upon not only all parties to the proceeding in which the decision was rendered, but also against those with whom a party is in privity. Washington v. Gould, 39 N.J. 527 (1963). And the question is whether this plaintiff was in privity with the board. Generally, one person is in privity with another and is bound by and entitled to the benefits of a judgment as though he was a party when there is such an identification of interest between *404 the two as to represent the same legal right, Hayes v. Ricard, 251 N.C. 485, 112 S.E.2d 123, 129 (1960), or if a person who is not a party controls or substantially participates in the control of the presentation on behalf of a party, Restatement, Judgments 2d, § 39, or if a person who is not a party to an action is represented by a party, including an "official or agency invested by law with authority to represent the person's interests." Id., § 41(d). Patently, the board was invested by law to represent the interests of plaintiff in 1971, not only to obtain a determination that defendant was the father of her child, but also to obtain support for the child.
While the doctrine of privity emanated from the common law and has been the subject of countless cases and articles, surprisingly there remains considerable disagreement about the effect of a judgment on a nonparty. See Currie, "Civil Procedure: The Tempest Brews," 53 Cal.L.Rev. 25 (1965); Moore & Currier, "Mutuality and Conclusiveness of Judgments," 35 Tul. L.Rev. 301 (1961). There is no clearly accepted definition of privity.
The traditional motion has been to include only "mutual or successive relationship[s] to the same rights of property," Comment "Privity Rule Reconsidered," 56 Cal.L.Rev. 1098, 1102 (1968), but a broader concept has recently evolved when "the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata." Bruszewski v. U.S., 181 F.2d 419, 423 (3 Cir.1950) (Goodrich, J., concurring), cert. den. 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed.2d 632 (1950).
Modern commentators support the broad view because it goes hand in hand with the policy of res judicata and collateral estoppel which is to bring litigation to an end. As said in McFadden v. McFadden, 239 Or. 76, 396 P.2d 202 (1964) if "the first litigation provided substantial protection of the rights and interests of the party sought to be bound in [the second] litigation" privity will be found. But if "the first litigation did *405 not afford proper protection to the rights of the person sought to be bound, then the court will hold that the parties have not been `in privity'." Id., 396 P.2d at 204. What courts are now doing is to shift:
the emphasis from a narrow technical rule based on a succession of property interests to a broader standard which asks whether the rights of the litigants were substantially protected or adequately represented in the prior action. [Comment: "Privity Rule Reconsidered," supra at 1103-1104]
The underlying purpose of the modern rule is fundamental fairness and common sense. Courts everywhere are being deluged with law suits and the necessity to reduce the volume of litigation must be considered so long as we do not adopt a constitutionally flawed rule which subverts fairness in a due process sense. Thus, it appears to be the modern rule that privity should be applied when:
1. The claim of the nonparty is based on the same transaction or occurrence,
2. The interests of both claimants are similar and no adverse interests exist,
3. The nonparty had notice of the earlier action, and
4. The nonparty did or had an opportunity to participate or intervene in the earlier case.
All of these factors exist here. Plaintiff fully participated in the earlier action and there is nothing to suggest that the board did not diligently and arduously pursue the 1971 suit against defendant.
In the present case, there is an identity of interest between the board and plaintiff, Kathryn Moore, in that both seek to prove that defendant is the natural father of the child born to plaintiff. To this end both parties had the same legal right to file a complaint against defendant for filiation and support, and it should make no difference that the board did so in 1971 and not plaintiff. As stated in DeSantis v. Dukes, 182 N.J. Super. 390 (Cty.Ct. 1981), "[i]n a bastardy proceeding there is a substantial identity of interest between the ... welfare board and the mother of the child in question." Id. at 394. Plaintiff was in privity with the board and is barred under the principles of res judicata and collateral estoppel from maintaining this action.
*406 There is another reason why this complaint must be dismissed. Her claim is barred by laches. In Flammia v. Maller, 66 N.J. Super. 440, 454 (App.Div. 1961) it was said that "[l]aches can be a defense only where there is a delay, unexplained and inexcusable, in enforcing a known right and prejudice has resulted to the other party because of such delay," and whether the principle should be applied "depends upon the circumstances of each particular case. Where it would be unfair to permit a stale claim to be asserted, the doctrine applies." Bookman v. R.J. Reynolds Tobacco Co., 138 N.J. Eq. 312, 406 (Ch. 1946).
"The mere passage of time, of course, does not constitute laches.' ... Laches in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of that right. [All State v. Howard Savings Inst., 127 N.J. Super. 479, 489 (Ch.Div. 1974)]
Plaintiff claimed in 1971 that defendant was the father of her child. Yet, for unexplained reasons, she did nothing for 15 years and now seeks to assert this claim in court. The unfairness to defendant is clear. Due to the passage of time not only has defendant been denied the right to attempt to develop a parent-child relationship with this 16-year old child, but he has incurred other obligations that would make it unfair to now burden him with the obligation to assume some of the costs for maintaining this child.
Plaintiff also seeks relief from the 1971 judgment under R. 4:50-1 et seq., which fixes six grounds upon which a court may relieve a "party" from a final judgment or order, three of which are alleged to have relevance to the present case: R. 4:50-1(a) for excusable neglect, R. 4:50-1(b) for newly discovered evidence which would probably alter a judgment and which by due diligence could not have been discovered in time to move for a new trial under R. 4:49 and R. 4:50-1(f) for any other reason justifying relief from the operation of a judgment. However, R. 4:50-2 specifically precludes use of (a) and (b) unless "[t]he *407 motion shall be made ... not more than one year after the judgment, order or proceeding was entered or taken." Obviously we are far beyond the one year period and (a) and (b) are inapplicable.
R. 4:50-1(f) affords relief at any time but only in exceptional cases, Hodgson v. Applegate, 31 N.J. 29, 41 (1959); Court Investment Co. v. Perillo, 48 N.J. 334, 341 (1966), when enforcement of a judgment or order would be unjust, oppressive or inequitable, Quigliato v. Bodner, 115 N.J. Super. 133, 139 (App.Div. 1971), and only if the motion is made "within a reasonable time." R. 4:50-2. Plaintiff argues that hers is an exceptional case because the near accurate HLA test was not available in 1971 and she now has a winnable case. But her situation is no more unique than that of thousands of other mothers who gave birth out of wedlock to children prior to Malvasi, all of whom were required to rely upon a less accurate blood test. There is nothing exceptional about a case in which a different result could be hypothesized at a later date because of new evidence created by reason of technological advancements which were not available at the original trial.
It is clear that a change in the law subsequent to the entry of a final judgment is not an extraordinary circumstance that constitutes an exceptional case. Hartford Ins. Co. v. All State Ins. Co., 68 N.J. 430 (1975). In Hartford there were two separate cases with different parties involving identical legal issues which were argued on the same day before the same part of the Appellate Division which made the same disposition in both cases. One unsuccessful party did not appeal, but the other did and the Supreme Court reversed the Appellate Division. In holding that the nonappealing party could not at a later date use R. 4:50-1(f) to re-open his case to obtain the benefit of the principle of law enunciated in the companion case, the Supreme Court said:
a "change in the law or in the judicial view of an established rule of law is not such an extraordinary circumstances" as to justify relief from a final judgment where the time to appeal has expired. This is unquestionably the general rule *408 and rests principally upon the important policy that litigation must have an end. [at 434]
If a change in law does not justify the re-opening of a state judgment, neither does improvement of a scientific test.
Moreover, R. 4:50-2 imposes the requirement that a motion made under (f) must be brought "within a reasonable time." This complaint was filed 16 years after the child was born. And while plaintiff could contend that because of the adverse result in 1971 it is unreasonable to have expected her to file this claim without the development of the more accurate HLA test, that still leaves unanswered why she waited six years after Malvasi. It might have been reasonable to have filed this action in 1979 or 1980, but it certainly was unreasonable to have waited six years after Malvasi.
Finally, it is not clear whether a person who was not an actual party in the earlier case, but who stands in privity with such a party, is permitted to assert a claim for relief from an earlier judgment under R. 4:50-1 et seq. A literal reading of the rules of court limits that right only to a "party." It is an interesting question, but it is not necessary to resolve that issue at this time.
For all of these reasons the complaint is dismissed and judgment entered in favor of defendant.