CHARTER FAIRMOUNT
INSTITUTE, INC.

v.

ALTA HEALTH STRATEGIES.

Civ. A. No. 93–3258.

United States District Court,
E.D. Pennsylvania.

Sept. 24, 1993.

Michael S. Dinney, Shea & Shea, Bryn
Mawr, PA, for plaintiff.

Jeffrey S. Estabrook, Bolger, Picker, Hankin & Tannenbaum, Philadelphia, PA, Thomas R. Lee, Jill A.N. Parrish, Kimball, Parr,

Waddoups, Brown & Gee, Salt Lake City, UT, for defendant.

## MEMORANDUM AND ORDER

HUTTON, District Judge.

Presently before the Court is the plaintiff Charter Fairmount Institute's ("Charter Fairmount") Motion for Remand; defendant Alta Health Strategies' ("Alta") response; Charter Fairmount's reply; Alta's Motion to Dismiss; Charter Health's response; and Alta's reply.

## I. FACTUAL BACKGROUND

The plaintiff, Charter Fairmount Institute, Inc., is a hospital seeking reimbursement for medical services rendered to Miss Heather Craiter. Miss Craiter was insured under her mother's health insurance plan. The defendant, Alta Health Strategies, administered the insurance plan that provided Miss Craiter's health insurance coverage. During the period from May 20, 1992 until June 25, 1992, Miss Craiter was hospitalized at the plaintiff's facility for major affective disorder. As a result of her hospitalization, charges were incurred in the amount of $43,536.75.

Alta allegedly confirmed that it would pay 100% of all expenses after the policy holder had met her $200 deductible. Miss Craiter's right to receive benefits under the plan was assigned to Charter Fairmount. Alta refused to pay, claiming that Miss Craiter's condition was "preexisting," and therefore excluded from coverage under the plan.

Charter Fairmount commenced an action in the Court of Common Pleas of Philadelphia County against Alta, in which it sought reimbursement for the $43,536.75 charge. Charter Fairmount premised its action on the following three common law theories: estoppel, misrepresentation and negligent misrepresentation. Believing the causes of action to be preempted by The Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001–1461, Alta removed the case to this Court.

## II. DISCUSSION

The defendant's theory of the case is that it is entitled to dismissal under Fed.R.Civ.P 12(b)(6) because the plaintiff's state law claims are preempted by ERISA and its complaint fails to state a claim upon which relief may be granted under ERISA. The question of whether removal was appropriate in this case is inextricably intertwined with the question of whether the plaintiff's causes of action are preempted.

### A. Removal Under § 1144(a)

■ The court's consideration of whether removal was proper must begin with a consideration of 28 U.S.C. § 1441, which grants defendants the right, in appropriate circumstances, to remove a case to federal court. Under 28 U.S.C. § 1441(a),

> any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant. . . .

28 U.S.C.A. § 1441(a) (West 1985 & Supp. 1993). However, the district court must remand a case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." *Id.* § 1447(c). Where there is no diversity of citizenship between the parties, the plaintiff's cause of action must raise a federal question. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). In its Petition for Removal, the defendant did not allege that diversity jurisdiction lies in the present case.[1] Thus, this Court's original jurisdiction over this matter lies, if at all, under federal question jurisdiction. *See* 28 U.S.C. § 1331(a).

### 1. The Well Pleaded Complaint Rule

■ Alta's argument with respect to removal is that because the plaintiff's claims are preempted by ERISA, the complaint presents a federal question. Thus, it asserts, the matter is removable under § 1441(a). The general rule, however, is that the plaintiff is entitled to remain in state court so long as its complaint does not present, on its face, an issue under federal law. *See Metropoli-*

---

1. Moreover, diversity jurisdiction is absent in the present case because the amount in controversy is less than the $50,000 threshold established by 28 U.S.C. § 1332.

tan Life Ins. Co. v. Taylor, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546–47, 95 L.Ed.2d 55 (1987); Railway Labor Execs. Ass'n v. Pittsburgh & Lake Erie R.R. Co., 858 F.2d 936, 939 (3d Cir.1988). For a case to present a federal question, "the statute, . . . right or immunity created by the Constitution or laws of the United States must be an element, and an essential one of the plaintiff's cause of action." Gully v. First Nat'l Bank in Meridian, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). Federal preemption is ordinarily a defense to a plaintiff's suit and, as such, does not appear on the face of a well-pleaded complaint. Albert Einstein Med. Ctr. v. National Benefit Fund for Hosp. & Health Care Employees, 740 F.Supp. 343, 348 (E.D.Pa.1989).

On its face, Charter Fairmount's complaint does not present a federal question. Rather, the complaint speaks the language of common law tort. It asserts claims for estoppel, misrepresentation and negligent misrepresentation. It does not expressly refer to ERISA and the rights or immunities created under ERISA are not essential elements of the plaintiff's claims. Accordingly, unless the doctrine of "complete preemption" is applicable, removal was inappropriate.

### 2. The Doctrine of "Complete Preemption"

■ Although the "well pleaded complaint rule" would ordinarily bar the removal of an action to federal court where federal jurisdiction is not presented on the face of the plaintiff's complaint, the action may be removed if it falls within the narrow class of cases to which the doctrine of "complete preemption" applies. Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). This independent corollary to the "well pleaded complaint rule" permits removal where "Congress . . .

so completely preempt[s] a particular area that any civil complaint raising this select group of cases is necessarily federal in character." Allstate Ins. Co. v. 65 Security Plan, 879 F.2d 90, 93 (3d Cir.1989) (quoting Taylor, 481 U.S. at 63–64, 107 S.Ct. at 1546). In Allstate, the Third Circuit Court of Appeals articulated a two-part test to be used in determining when a cause of action is completely preempted. The court stated that the doctrine applies only when:

(1) the enforcement provisions of a federal statute create a cause of action vindicating the same interest that the plaintiff's cause of action seeks to vindicate; and

(2) there is affirmative evidence of a congressional intent to permit removal despite the plaintiff's exclusive reliance on state law. Id. The court will address each element of the Allstate test in turn.

#### a. A Federal Cause of Action Under ERISA

■ The first prong of the Allstate test has divided the district courts within this circuit. At issue in the present case is whether § 1132(a)(1)(B),[2] the enforcement provision under ERISA, creates a cause of action vindicating the same interests that the plaintiff's cause of action seeks to vindicate. Under § 1132(a)(1)(B), only "participants"[3] and "beneficiaries" have standing to bring a lawsuit. Id.; 29 U.S.C.A. § 1132(a)(1) (West 1985 & Supp.1993). Charter Fairmount clearly does not fall within the definition of a "participant" for purposes of § 1132(a)(1)(B). Thus, if Charter Health has standing to sue, it can only be as a "beneficiary."

For purposes of § 1132(a)(1)(B), a beneficiary is "a person designated by a participant, or by the terms of an employee benefit plan who is or may become entitled to a benefit thereunder." 29 U.S.C.A. § 1002(8)

---

**2.** Under § 1132(a), "[a] civil action may be brought—by a participant or beneficiary—to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C.A. § 1132(a)(1)(B) (West 1985 & Supp.1993).

**3.** A participant is:

any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.
29 U.S.C.A. § 1002(7) (West 1985 & Supp.1993).

(West 1985 & Supp.1993). The Third Circuit has held that a nonenumerated party, such as Charter Health, is not a beneficiary in its own right. *Northeast Dep't ILGWU v. Teamsters Local Union No. 229*, 764 F.2d 147 (3d Cir.1985). However, the more difficult question, and the one that has generated the most controversy is whether a health care provider has derivative standing to sue under § 1132(a)(1)(B) where the health care provider is an assignee of an insured's claim under an ERISA "employee welfare benefit plan."[4]

Several district courts within this circuit have held that health care providers are not "beneficiaries" under § 1132(a)(1)(B). The plaintiff has identified three of these cases. Specifically, the plaintiff argues that this case is controlled by *The Horsham Clinic, Inc. v. Principal Mutual Life Ins. Co.*, C.A. No. 92–1003, 1992 WL 165109 (E.D.Pa. June 12, 1992), *The Horsham Clinic, Inc. v. Trovarello*, C.A. No. 90–2893, 1990 WL 73027 (E.D.Pa. May 29, 1990) and *Health Scan, Ltd. v. Travelers Ins. Co.*, 725 F.Supp. 268 (E.D.Pa.1989).

In addition to the cases cited by the plaintiff, this Court's research has disclosed two other district court decisions within this circuit holding that health care providers lack standing to sue under § 1132(a)(1)(B). *See Allergy Diagnostics Laboratory v. The Equitable*, 785 F.Supp. 523, 527 (E.D.Pa.1991); *Cameron Manor, Inc. v. United Mine Workers of America*, 575 F.Supp. 1243, 1246 (E.D.Pa.1983). In all of the foregoing cases, both those identified by the plaintiff and those identified by this Court, the courts held that a medical provider lacked standing under § 1132(a)(1)(B). However, the courts did not all employ the same rationale to reach their holdings.

In *Principal Mutual*, The Horsham Clinic, a health care provider, brought a state court action against an insurance company, which insured participants and beneficiaries of an ERISA-qualified welfare benefit plan. *Principal Mutual*, 1992 WL 165109, at *1. The suit arose out of the clinic's having rendered medical services to a patient who was a

beneficiary under his father's insurance plan. *Id.* Prior to admitting the patient, a representative of the clinic contacted the defendant-insurance company to ascertain the extent of the patient's health insurance coverage and, allegedly, was told by the defendant-insurance company that it would pay 100% of the insured's expenses after the insured's expenses exceeded $640. *Id.* However, when the clinic eventually submitted bills to the insurer, the insurer allegedly paid less than half of the amount that they had promised to pay. *Id.* The clinic sued the insurer in state court, arguing that it had "detrimentally relied" upon the representations made by the insurer's agent. *Id.* The defendant-insurance company removed the case to federal court and the plaintiff filed a motion to remand. *Id.*

In considering the plaintiff's motion to remand, the Honorable James McGirr Kelly addressed the question of whether a health care provider has standing to sue under § 1132(a)(1)(B). Relying upon the prior district court decisions in *Albert Einstein Med. Ctr. v. Action Mfg. Co.*, 697 F.Supp. 883 (E.D.Pa.1988) and *Health Scan, supra*, Judge Kelly concluded that health care providers lack standing under § 1132(a)(1)(B). *Id.* at 1992 WL 165109 *2; *accord Cameron Manor*, 575 F.Supp. at 1246 (relying in part on a California district court decision, which has since been overruled, for the proposition that health care providers lack standing under § 1132(a)(1)(B)). However, and significantly, there was no evidence that the insureds in *Principal Mutual* or *Cameron Manor* had assigned their benefits to the respective health care providers.

In *Action Manufacturing*, one of the primary cases relied upon by the *Principal Mutual* court, a health care provider sued the defendant, an employer, claiming that the employer's benefit plan misrepresented that the plan would cover the expenses of one of its beneficiaries. *Action Manufacturing*, 697 F.Supp. at 884. As in *Principal Mutual*, the plaintiff brought a lawsuit in state court alleging that the defendant was "estopped" from disputing the plaintiff's entitlement to

---

4. The term "employee welfare benefit plan" is defined in § 1002(1). Neither party in the pres-

. ent case disputes that the plan at issue is an "employee welfare benefit plan."

reimbursement based upon the defendant's representations. *Id.* The defendant removed the case to federal court on the basis that the plaintiff's claim was preempted by ERISA. *Id.* The court agreed with the plaintiff and remanded the case, reasoning that "the case for preemption is ... weak[ ] in this context in which the claim is not based on a right related to plaintiff's statutory protections under ERISA." *Id.* at 885. The court, however, did not cite any authority to support the proposition that the plaintiff lacked statutory protections. Moreover, the court's opinion did not address whether the insured had assigned his benefits to the plaintiff, nor did it discuss the legal effect of such an assignment.

The other case relied upon by the *Principal Mutual* court was *Health Scan.* In *Health Scan,* a health care provider alleged, *inter alia,* that it had "detrimentally relied" upon the defendant-insurance company's course of conduct in paying defendant's insured's medical bills. *Health Scan,* 725 F.Supp. at 268. The plaintiff alleged that it had standing to sue under § 1132(a)(1)(B) as the assignee of a beneficiary's claim under an ERISA plan. *Id.* at 269. The court disagreed, reasoning that the Third Circuit's decision in *ILGWU* precluded such an interpretation of § 1132(a)(1)(B). More specifically, the *Health Scan* court noted that in footnote six of the court's opinion in *ILGWU,* which was endorsed by two of the three members of the *ILGWU* panel, the court stated that "'Congress simply made no provision in § 1132(a) for persons other than those enumerated to sue, including persons purporting to sue on their behalf.'" *Id.* (*quoting ILGWU,* 764 F.2d at 154 n. 6). The *Health Scan* court acknowledged that footnote six was dicta, but, nevertheless held that the plaintiff lacked standing under § 1132(a)(1)(B). *Id.*

The final case cited by the plaintiff in support of its motion to remand is *Trovarello,* which, like *Principal Mutual* and *Action Manufacturing,* involved a health care provider's attempt to recover for medical expenses that were rendered in reliance upon the defendant, Nationwide Insurance Company's representation that medical expenses would be paid. The plaintiff brought suit in state court under a common law "estoppel" theory and Nationwide removed the action to federal court. *Trovarello,* 1990 WL 73027, at *1. The *Trovarello* court adopted the rationale of *Action Manufacturing* and remanded the case to state court. *Id.* at *1. However, as in *Action Manufacturing,* the court's opinion did not address whether the insured had assigned his benefits to the plaintiff, nor did it discuss the legal effect of such an assignment.

Upon analysis, two common threads emerge from these cases. The first is that in four of the cases, *Action Manufacturing, Principal Mutual, Cameron Manor* and *Trovarello,* the courts either did not discuss whether there had been an assignment of rights under the respective plans or concluded that there was no evidence of such an assignment. In the other case that arguably supports Charter Fairmount's position, *Health Scan,* the court grounded its holding that health care providers lack standing under § 1132(a)(1)(B) on a broad interpretation of the dicta contained in footnote six of the Third Circuit's *ILGWU* decision. Under this approach, even in cases where health care providers are assignees of insureds' rights under a plan, the health care provider is not a § 1132(a)(1)(B) beneficiary, and, therefore, lacks standing to sue under ERISA.

Notwithstanding the court's conclusion in *Health Scan,* the Third Circuit has never directly addressed the question of whether a health care provider has derivative standing to sue under § 1132(a)(1)(B) where the health care provider is the assignee of the insured's rights under an ERISA welfare benefit plan. In *ILGWU,* the court held that "the express jurisdictional provisions of ERISA, found in 29 U.S.C. § 1132, do not authorize federal jurisdiction over a suit brought by a pension fund and its trustee against another pension fund" in an action to determine which of two funds must pay a beneficiary's claim. *ILGWU,* 764 F.2d at 154. In reaching its conclusion the court stated:

We believe that ... § 1132(a)(1)(B) must be read narrowly and literally [and] [s]uch a reading precludes the interpretation that a pension fund or a trustee (fiduciary) of a

fund can sue under § 1132(a)(1)(B) *on behalf of* participants or beneficiaries.

*Id.* at 153 (emphasis added).

Several courts within this circuit have held that health care providers have standing to sue under § 1132(a)(1)(B) where there has been an assignment of rights under a plan. These courts have expressly considered the applicability of the Third Circuit's *ILGWU* decision, but have accorded it a much narrower reading than the *Health Scan* or *Principal Mutual* courts.

In *Northwestern Inst. of Psychiatry, Inc. v. Travelers Ins. Co.*, C.A. No. 92–1520, 1992 WL 236257 (E.D.Pa. Sept. 3, 1992), the court was squarely presented with the issue of whether a health care provider has standing to sue under § 1132(a)(1)(B) as a "beneficiary." The plaintiff in *Northwestern Institute* was a hospital seeking recovery for medical services that it had rendered to railroad employees who were insured under an ERISA welfare benefit plan. *Id.* at *1. The defendant both administered the plan and provided insurance coverage for claims that exceeded plan limits. *Id.* Individuals who were covered under the plan assigned their rights to the plaintiff prior to receiving treatment. *Id.* at *2. According to the plaintiff, the defendant ceased paying claims despite its having continuously paid such claims for several years. *Id.* The plaintiff filed suit in the district court alleging in Count I that it was entitled to relief against both the insurer/administrator and the plan under ERISA. *Id.* In several other counts, the plaintiff asserted state common law claims under "promissory estoppel" and "negligent misrepresentation" theories. *Id.* The defendant administrator/insurer moved to dismiss. *Id.*

The court began its analysis by considering *ILGWU* and rejecting the proposition that footnote six was controlling. *Id.* The court noted that the plain language of § 1002(8) seemed to contemplate beneficiaries other than those specifically enumerated by the terms of the plan. *See* 29 U.S.C.A. § 1002(8) (West 1985 & Supp.1993) (providing that parties "designated by participants" are "beneficiaries"). The court further reasoned that

"[i]f Congress had intended to create confusion and increased costs for ERISA beneficiaries by precluding the relatively simple assignment procedure so widely used in the health care industry, Congress would have said so in large black letters." *Id.* at *3 (*quoting Hahnemann Med. College & Hosp. v. Stone*, C.A. No. 86–7059, 1987 WL 17568 (E.D.Pa. Sept. 23, 1987)). Based upon the plain language of the statute and the relevant case authorities, the court concluded that "in light of the alleged assignment of benefits under the Plan, [the plaintiff] may be deemed a beneficiary as that term is defined in § 1002(8) and may, therefore, assert a claim under § 1132(a)(1)(B)." *Id.*

Similarly, in *Winter Garden Med. Ctr. v. Montrose Food Prods.*, C.A. No. 91–2327, 1991 WL 124577 (E.D.Pa. July 3, 1991), the court permitted a health care provider to maintain an action under § 1132(a)(1)(B). As in *Northwestern Institute*, the court in *Winter Garden* rejected the notion that *ILGWU* controlled the decision. *Id.* at *3 n. 2. Rather, the court reasoned that when there is evidence of an actual assignment of insurance benefits, the assignee-health care provider is a "beneficiary" under § 1002(8) and thus may maintain an action under § 1132(a)(1)(B). *Id.* at *3; *see also Bryn Mawr Hosp. v. Coatesville Elec. Supply Co.*, 776 F.Supp. 181, 184 (E.D.Pa.1991) (holding that, as an assignee, a hospital had derivative standing under § 1132(a)(1)(B)); *National Benefit Fund*, 740 F.Supp. at 349 (same). Finding evidence of an assignment to be present, the court denied the plaintiff's motion to remand the case to state court, as the state common law claims were preempted by ERISA. *Id.*

Moreover, all the United States Courts of Appeals that have directly considered the question of whether an assignee of medical benefits falls within the definition of a beneficiary for purposes of bringing an action under § 1132(a)(1)(B), have held that such health care providers *are* beneficiaries under § 1132(a)(1)(B). The Ninth Circuit was the first to address this question and it did so in *Misic v. Building Employees Health & Welfare Trust*, 789 F.2d 1374 (9th Cir.1986). The reasoning set forth in *Misic* has per-

suaded three other United States Courts of Appeals to hold that health care providers, once assigned the right to receive claims under an ERISA welfare benefit plan, are beneficiaries under § 1132(a)(1)(B). *See Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272, 1277–78 (6th Cir.1991), *cert. dismissed,* ── U.S. ──, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992); *Kennedy v. Connecticut General Life Ins. Co.,* 924 F.2d 698, 700 (7th Cir.1991); *Hermann Hosp. v. MEBA Med. & Benefits Plan,* 845 F.2d 1286, 1289–90 (5th Cir.1988).

This Court is persuaded that the law as articulated by all four of the federal circuit courts that have considered the question and by the district courts in *Northwestern Institute, Winter Garden* and *Bryn Mawr Hosp.* provides the persuasive rule of law.

**b.  *Congressional Intent to Permit Removal***

■  ERISA's preemption provision is contained in § 1144(a), which provides that except for certain exclusions, "the provisions of this subchapter ... shall supersede any and all state laws insofar as they may now or hereafter *relate to* any employee benefit plan...." 29 U.S.C.A. § 1144(a) (West 1985 & Supp.1993) (emphasis added). The Supreme Court has repeatedly noted that ERISA's preemption clause is conspicuous for its breadth. *District of Columbia v. Greater Washington Bd. of Trade,* ── U.S. ──, ──, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 (1992); *Ingersoll Rand Co. v. McClendon,* 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990); *FMC Corp. v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 407–08, 112 L.Ed.2d 356 (1990); *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 45, 107 S.Ct. 1549, 1551–52, 95 L.Ed.2d 39 (1987). The Court has emphasized that

> the phrase "relate to" [is to be] given its broadest common sense meaning, such that a state law relates to a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan.

*Pilot Life,* 481 U.S. at 47, 107 S.Ct. at 1553. Moreover, the preemption clause is not limited to "state laws specifically designed to affect employee benefit plans." *Ingersoll–Rand,* 498 U.S. at 138, 111 S.Ct. at 482.

In *Ingersoll–Rand,* the Court re-emphasized the breadth of ERISA preemption in the context of a plaintiff's claim that its state common law tort and contract claims were not preempted. The Court stated that the preemption clause's

> 'deliberately expansive' language was designed to 'establish pension plan regulation as exclusively a federal concern. (citation omitted).' The key to [§ 1144(a)] is found in the words 'relate to.' Congress used those words in their broad sense rejecting more limited preemption language that would have made the clause 'applicable only to state laws relating to the specific subjects covered by ERISA (citation omitted).' Moreover, to underscore its intent that [§ 1144(a)] be expansively applied, Congress used equally broad language in defining the 'State law' that would be preempted. Such laws include 'all laws, decisions, rules regulations or other state action having the effect of law.'

*Id.* at 138–39, 111 S.Ct. at 482–83. To further clarify the breadth of ERISA preemption, the Court concluded that ERISA preemption applies in situations where "there is simply no cause of action if there is no plan." *Id.* at 140, 111 S.Ct. at 484. Reasoning that because the state cause of action "purports to provide a remedy for the violation of a right expressly guaranteed [by ERISA]," the Ingersoll–Rand Court held that the plaintiff's state common law claims were preempted. *Id.* at 145, 111 S.Ct. at 486.

This Court agrees with the numerous courts within this circuit which have held that state common law causes of action such as those asserted by Charter Fairmount are preempted. *See Berger v. Edgewater Steel Co.,* 911 F.2d 911, 923 (3d Cir.1990) (holding that ERISA preempts state common law "misrepresentation" claim), *cert. denied,* 499 U.S. 920, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991); *Elesser v. Hospital of Philadelphia College of Osteopathic Medicine,* 802 F.Supp. 1286, 1292 (E.D.Pa.1992) (holding that claims based on "misrepresentation" are preempted by § 1132(a)(1)(B)); *Northwestern Institute,* 1992 WL 236257, at *7 (noting that health

240

care provider, through its assertion of common law "estoppel" and "negligent misrepresentation" actions seeks to recover the same damages as might be recovered through an § 1132(a)(1)(B) action and, therefore, common law actions against insurer are preempted); *Winter Garden*, 1991 WL 124577, at *2 (holding that state common law actions are preempted by ERISA); *National Benefit Fund*, 740 F.Supp. at 348 (holding that "estoppel" claim is preempted by ERISA). Given that Charter Fairmount has standing to sue under § 1132(a)(1)(B) and given the breadth of ERISA's preemptive reach, the Court concludes that Charter Fairmount's appropriate remedy is pursuant to the terms of ERISA. *See Pilot Life*, 481 U.S. at 52, 107 S.Ct. at 1555 (analyzing the legislative history to ERISA and concluding that § 1132 is the exclusive vehicle for actions by ERISA plan participants and beneficiaries). In light of Congress' intent to permit claims "related to" ERISA qualified plans as exclusively federal concerns, the Court holds that the second prong of *Allstate* is satisfied. *See also Bryn Mawr Hosp.*, 776 F.Supp. at 184 (holding that removal was proper where the plaintiff was an assignee-beneficiary under § 1132(a)(1)(B)); *Winter Garden*, 1991 WL 124577, at *2 (same); *National Benefit Fund*, 740 F.Supp. at 348–49 (same). Accordingly, the present case was properly removed to federal court and the plaintiff's Motion for Remand is denied.

### B. *Alta's Motion to Dismiss*

Because this case was properly removed pursuant to 28 U.S.C. § 1441, this Court has subject matter jurisdiction over the present matter, and, therefore, may now address the defendant's Motion to Dismiss. As on a Motion to Remand, on a Motion to Dismiss, the relevant facts are those set forth in the plaintiff's complaint, and the complaint shall be construed in the light most favorable to the plaintiff. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989). Based upon the Court's consideration of the facts as set forth in the plaintiff's complaint and the controlling legal principles, the plaintiff's state common law claims are preempted by ERISA. The plaintiff has not asserted any claims under ERISA.

An appropriate Order follows.

### ORDER

AND NOW, this 22nd day of September, 1993, upon consideration of the Plaintiff Charter Fairmount Institute's ("Charter Fairmount") Motion for Remand; the Defendant Alta Health Strategies' ("Alta") response; Charter Fairmount's reply; Alta's Motion to Dismiss; Charter Health's response; and Alta's reply, IT IS HEREBY ORDERED that the Plaintiff's Motion for Remand is DENIED and the Defendant's Motion to Dismiss is DENIED.

IT IS FURTHER ORDERED that the Plaintiff is granted leave to file an Amended Complaint within twenty (20) days of the date of this Order.