301 B.R. 662 (2003)
In the Matter of LYMECARE, INC., Debtor.
Steven R. Neuner, Esq., Chapter 7 Trustee and Lyme Disease Treatment Center, Inc., Plaintiffs,
v.
Horizon Blue Cross Blue Shield of New Jersey, et al., Defendants.
Bankruptcy No. 98-18746/JHW. Adversary No. 99-1280.
United States Bankruptcy Court, D. New Jersey.
November 5, 2003.
*663 *664 *665 *666 Ben H. Becker, Esq., Martin L. Borosko, Esq., Becker Meisel LLC, Livingston, NJ, for Horizon BC/BS of NJ.
Jerry L. Tanenbaum, Esq., Schnader, Harrison, Segal & Lewis LLP, Woodland Falls Corporate Park, Cherry Hill, NJ, for the Chapter 7 Trustee.
Michael Berger, Esq., Michael Dolich, Esq., Andres & Berger, Haddonfield, NJ, for LDTC.

OPINION ON HORIZON'S SECOND MOTION FOR SUMMARY JUDGMENT
JUDITH H. WIZMUR, Bankruptcy Judge.
In this adversary proceeding, Horizon Blue Cross Blue Shield of New Jersey moves for summary judgment to dismiss claims filed against it by the Chapter 7 bankruptcy estate of LymeCare, Inc. and a related entity, Lyme Disease Treatment Center, Inc. For the reasons expressed below, Horizon's motion is granted in part and denied in part.

FACTS
Defendant Horizon Blue Cross Blue Shield of New Jersey ("Horizon") is a non-profit health services corporation authorized and established under the Health Service Corporations Act, N.J.S.A. 17:48E-1 et seq. Horizon provides health benefits to its subscribers through various individual and group plans. Generally, the subscriber, or the subscriber's employer on his/her behalf, pays a periodic subscription premium to Horizon. In return, Horizon agrees to pay certain health care providers a predetermined amount to provide specified services to Horizon's subscribers, as outlined in the contract between the parties. To facilitate this arrangement, Horizon maintains networks of medical providers who have contractually agreed to participate in its programs, and have agreed to be bound by Horizon's policies and procedures. These providers are referred to as "participating providers."
Horizon's participating providers are paid directly by Horizon for the care they provide to Horizon's subscribers. Depending on the contract, the subscribers can also seek medical care from non-participating providers, in which case payment may be made to the subscriber, rather than directly to the provider.
The debtor, LymeCare, Inc. ("LymeCare"), its predecessor, Anthony L. Lionetti, M.D., P.C., and its officer and shareholder, Dr. Anthony L. Lionetti, a licensed New Jersey physician, operated a facility in Hammonton, New Jersey, specializing in the treatment of patients with Lyme disease. They served as participating providers to Horizon subscribers from January 1, 1994 through December 28, 1998, under an "Agreement with Participating Physicians and Providers" with Horizon. In 1995, this agreement was amended to provide that the participating physician agrees to "abide by our [Horizon's] policies and procedures as they exist today and as they may exist in the future." On December 29, 1998, LymeCare and Dr. Lionetti were terminated by Horizon as participating providers.
On September 21, 1998, LymeCare filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.[1] In *667 this adversary proceeding, LymeCare[2] seeks to collect reimbursement payments from Horizon, asserting causes of action for breach of contract and for violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). The debtor alleges that Horizon failed to pay for medical care and treatment that the debtor provided to Horizon subscribers for Lyme disease while it was a participating provider, and that it failed to honor assignments of benefits the debtor received from Horizon subscribers after the termination of the debtor's participating provider status with Horizon. In response, Horizon cites its uniform medical policy governing reimbursement for the treatment of Lyme disease. Because the diagnosis and treatment rendered by Dr. Lionetti were not in conformance with Horizon's policies and procedures, the services were not covered by Horizon's reimbursement policy and Horizon denied payment.
Horizon filed a motion for summary judgment on April 18, 2002. By opinion dated June 27, 2002, Horizon's summary judgment motion on breach of contract grounds, including breach of the implied covenant of good faith and fair dealing, was denied. Horizon's summary judgment motion validating and enforcing the anti-assignment of benefits clauses in its subscriber contracts was granted. Conditioned upon the validation of the debtor's termination by Horizon as a participating provider, summary judgment in Horizon's favor rejecting the debtor's claims for reimbursement from Horizon based on the Assignment of Benefits forms was granted. Horizon's summary judgment motion to strike from the debtor's reimbursement claims those patients who have not been identified as either Horizon subscribers or subscribers of plans which Horizon administers was also granted. The motion to strike those patients who have been identified by the debtor as Horizon subscribers was denied.

DISCUSSION
Summary judgment is appropriate where the moving party is entitled to judgment, as a matter of law, and where there exists no genuine dispute as to any material fact. Nebraska v. Wyoming, 507 U.S. 584, 590, 113 S.Ct. 1689, 1694, 123 L.Ed.2d 317 (1993); Hampton v. Borough of Tinton Falls Police Dep't, 98 F.3d 107, 112 (3d Cir.1996); Gottshall v. Consol. Rail Corp., 56 F.3d 530, 533 (3d Cir.1995). Bankruptcy Rule 7056 makes Fed.R.Civ.P. 56 applicable to adversary proceedings. Rule 56(c) provides in pertinent part that the "judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
By this summary judgment motion, Horizon seeks to dismiss plaintiffs' claims arising under the Federal Employee Health Benefits Program ("FEHBP"), the State Health Benefits Plan ("SHBP"), and the self-funded plans established for the Hotel Employees and Restaurant Employees International Union Welfare Fund (hereinafter "Local 54") and the Local 68 Engineers Union Welfare Fund (hereinafter "Local 68"). Horizon contends that plaintiffs' claims should be dismissed because the claimants failed to exhaust their administrative remedies prior to bringing *668 suit, because Horizon, as the administrator for the plans, is not the proper defendant, because the plaintiffs lack standing under ERISA to assert their claims, and because collateral estoppel bars plaintiffs from relying on Dr. Lionetti's protocol under either the SHBP or Horizon policies. These arguments must be considered in the context of each plan under which the claims arise.[3]
I. Federal Employees Health Benefits Plan
Thirteen of the patients at issue here were insured under the FEHBP, the comprehensive federal program designed to subsidize payments for the coverage of health benefits provided to federal employees. See Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. § 8901, et seq. Under the FEHBA, the Office of Personnel Management ("OPM") is authorized to negotiate contracts with qualified carriers who provide health benefit coverage to the participants under the FEHBP plan. In this case, Horizon administers the FEHBP pursuant to a contract between Blue Cross Blue Shield and the OPM.
In their complaint, the plaintiffs contend that Horizon is indebted to the plaintiffs under the terms of ERISA and under state law on breach of contract grounds for the medical care and treatment of Lyme disease provided to Horizon's insureds. As to patients insured under the FEHBP, the plaintiffs' complaint fails on both grounds.
A. ERISA.
First, ERISA does not apply to FEHBP insureds. Under 29 U.S.C. § 1003(b), ERISA does not apply to "a governmental plan (as defined in section 1002(32) of this title)." Section 1002(32) defines a governmental plan to mean "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32). FEHBP is clearly a "governmental plan" excluded from ERISA requirements.
B. Preemption.
Second, the plaintiffs cannot succeed on state law breach of contract grounds because the FEHBA completely preempts such state law claims. See, e.g., Botsford v. Blue Cross & Blue Shield of Mont., Inc., 314 F.3d 390 (9th Cir.2002). Section 8902 provides in relevant part:
The Office of Personnel Management may contract with qualified carriers offering plans described by section 8903 or 8903a of this title, without regard to section 5 of title 41 or other statute requiring competitive bidding. Each contract shall be for a uniform term of at least 1 year.
. . .
The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.
5 U.S.C. § 8902(a); (m)(1) (reflecting 1998 amendment). A 1998 amendment to *669 § 8902(m)(1) "eliminated language that had previously limited preemption `to the extent that such [state] law or regulation is inconsistent with such contractual provisions.' Courts have found this change in language to be persuasive evidence of congressional intent to completely preempt state law." St. Mary's Hosp. v. Carefirst of Md., Inc., 192 F.Supp.2d 384, 388 (D.Md.2002). The legislative history reflects that the 1998 amendment
confirms the intent of Congress (1) that FEHB program contract terms which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) completely displace State or local law relating to health insurance or plans and (2) that this preemption authority applies to FEHB program plan contract terms which relate to the provision of benefits or coverage, including managed care programs.
H.R.Rep. 105-374 at 16 "Federal Employees Health Care Protection Act of 1997" (1997). See Doyle v. Blue Cross Blue Shield of Illinois, 149 F.Supp.2d 427, 433 (N.D.Ill.2001) ("the language of the House Report is sufficiently clear to demonstrate an intent to create complete preemption"); Rievley v. Blue Cross Blue Shield of Tennessee, 69 F.Supp.2d 1028, 1034 (E.D.Tenn.1999) ("Congress has demonstrated a clear intention that FEHBA completely preempt state law in the area of federal employee health insurance plans"). See also Botsford v. Blue Cross & Blue Shield of Mont., Inc., 314 F.3d 390, 395 (9th Cir.2002) ("courts have held that FEHBA preempts disputes over a `denial of benefits' and `the nature or extent of coverage for benefits'"); Carter v. Blue Cross Blue Shield of Fla., Inc., 61 F.Supp.2d 1237, 1240 (N.D.Fla.1999) ("1998 Act removed the phrase . . . that had troubled some courts in determining whether there was complete preemption"); Kight v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc., 34 F.Supp.2d 334, 339 (E.D.Va.1999) ("House Report noted that the purpose of the amendment was to affirm Congress' preemptive intent").
C. Administrative Exhaustion.
Because ERISA does not apply to plaintiffs' claims for reimbursement for treatment of federal employees insured under FEHBP, and because state law claims are preempted, plaintiffs may recover against Horizon for treatment of FEHBP insureds only if FEHBP requirements are met. Horizon contends that plaintiffs' FEHBP claims must be dismissed because the plaintiffs have failed to exhaust mandatory FEHBA administrative appeal procedures, and because only the OPM may be named as a defendant in an action to challenge a denial of benefits.
The Federal Employees Health Benefits Act, 5 U.S.C. § 8901, et seq. ("FEHBA") does not specify appeal procedures for denial of claims, but does authorize the OPM to promulgate regulations to administer the FEHBP, which it has done. The applicable regulations detailing the procedures for filing a claim and for access to judicial review provide in relevant part:
(1) Each health benefits carrier resolves claims filed under the plan. All health benefits claims must be submitted initially to the carrier of the covered individual's health benefits plan. If the carrier denies a claim (or a portion of a claim), the covered individual may ask the carrier to reconsider its denial. If the carrier affirms its denial or fails to respond as required by paragraph (c) of this section, the covered individual may ask OPM [Office of Personnel Management] to review the claim. A covered individual must exhaust both the carrier and OPM review processes specified in *670 this section before seeking judicial review of the denied claim.
5 C.F.R. § 890.105.
(c) Federal Employees Health Benefits (FEHB) carriers resolve FEHB claims under authority of Federal Statute (5 U.S.C. chapter 89). A covered individual may seek judicial review of OPM's final action on the denial of a health benefits claim. A legal action to review final action by OPM involving such denial of health benefits must be brought against OPM and not against the carrier or carrier's subcontractors. The recovery in such a suit shall be limited to a court order directing OPM to require the carrier to pay the amount of benefits in dispute.
(d) An action under paragraph (c) of this section to recover on a claim for health benefits:
(1) May not be brought prior to exhaustion of the administrative remedies provided in § 890.105.
5 C.F.R. § 890.107. As explained by the Ninth Circuit in Botsford,
OPM has created a detailed administrative enforcement scheme for resolving disputes over FEHBA benefits. Pursuant to the regulatory scheme, a beneficiary must first submit a dispute over benefits to the carrier and then to OPM before seeking judicial review. Moreover, beneficiaries may only name OPM, not the carrier, in a suit, and "recovery . . . [is] limited to a court order directing OPM to require the carrier to pay the amount of benefits in dispute."
Botsford v. Blue Cross & Blue Shield of Mont., Inc., 314 F.3d 390, 397 (9th Cir.2002).
Here, the plaintiffs have failed to submit the dispute regarding FEHBP employees to the OPM prior to seeking judicial review, and have named the carrier, Horizon Blue Cross and Blue Shield of New Jersey, rather than the OPM, as the defendant.
"The doctrine of exhaustion of administrative remedies provides that `no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" Kobleur v. Group Hospitalization & Medical Servs., Inc., 954 F.2d 705, 709 (11th Cir.1992) (quoting Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938)). "Although the FEHBA does not expressly prescribe an administrative remedy, agency regulations promulgated under the authority of the statute may create an exhaustion requirement despite the absence of such a requirement within the text of the statute." Id. (citing to Coit Indep. Joint Venture v. F.S.L.I.C., 489 U.S. 561, 109 S.Ct. 1361, 1374, 103 L.Ed.2d 602 (1989)). Where the exhaustion requirement is created by agency regulations, "the decision whether to require exhaustion is a matter for district court discretion." Id. at 711. While the Third Circuit has not addressed the issue of administrative exhaustion in the context of the FEHBA, the court has opined in another context that a court may, in certain circumstances, look past the failure to exhaust administrative remedies and exercise its discretion to consider the issue presented. Anjelino v. New York Times Co., 200 F.3d 73, 87 (3d Cir.1999). See also Scholl v. QualMed, Inc., 103 F.Supp.2d 850, 853 (E.D.Pa.2000).
The plaintiffs contend that Horizon should be barred from relying on a "failure to exhaust" defense because Horizon failed to meet its obligations to provide timely or sufficient notice of claims denials and appellate procedures, because Horizon delayed in raising the issue during this litigation, and because it would be futile to *671 pursue administrative remedies now, because the time to file such appeals has expired.
Factually, the plaintiffs contend that:
Horizon often placed patient claims in limbo for more than a year before issuing any denial; and, in the few denials that Horizon actually issued, Horizon: always failed to set forth the pertinent plan provisions; failed in all but one instance to furnish documents relevant to the decision; in some cases failed to provide a reason for the denial; and, in one instance, give notice of the right to appeal.
Plaintiffs' Brief in Opp. to Horizon BC-BS of NJ's Second Motion for Partial Summary Judgment at 7. In addition, plaintiffs claim that Horizon subjected the plaintiffs "to a broad array of confusing and contradictory demands designed to delay or eliminate payment obligations," constituting a lengthy "run-around" process. Id. at 6. Horizon does not dispute plaintiffs' factual presentation on this summary judgment motion. I will accept the plaintiffs' factual presentation and conclude that Horizon failed to meet noticing requirements to FEHBP participants.[4]
There is some support, particularly in cases arising under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et. seq.,[5] for the proposition that where the claimant has not been properly noticed of the requisite administrative remedies, it would be unfair to invoke the exhaustion defense to bar judicial review. Sibley-Schreiber v. Oxford Health Plans, Inc., 62 F.Supp.2d 979, 988-89 (E.D.N.Y.1999) (Defendants may not plead the doctrine of exhaustion as a shield against litigation when they have failed to educate policyholders about the need to exhaust at the time the adverse decisions are made.). See also VanderKlok v. Provident Life & Accident Ins. Co., 956 F.2d 610, 617-18 (6th Cir.1992) (Insurer who failed to give sufficient detail about the reasons for claim denial and about the steps to be taken to obtain review is not entitled to the protections concerning administrative review); Curry v. Contract Fabricators Inc. Profit Sharing Plan, 891 F.2d 842, 846-47 (11th Cir.1990) ("When a plan administrator in control of the available review procedures denies a claimant meaningful access to those procedures, the district court has discretion not to require exhaustion.").[6]
The plaintiffs' contention that Horizon's exhaustion defense should be defeated here is strengthened by the fact that Horizon failed to raise the issue as an affirmative defense in its pleadings and *672 failed to raise the issue at all until May 2003, nearly four years after the commencement of the suit. "Failure to exhaust administrative remedies is generally an affirmative defense subject to waiver." McCoy v. Board of Trustees of Laborers' Intern. Union, Local No. 222 Pension Plan, 188 F.Supp.2d 461, 467 (D.N.J.2002).
Affirmative defenses must be raised as early as practicable, not only to avoid prejudice, but also to promote judicial economy. If a party has a successful affirmative defense, raising that defense as early as possible, and permitting a court to rule on it, may terminate the proceedings at that point without wasting precious legal and judicial resources.
Robinson v. Johnson, 313 F.3d 128, 137 (3d Cir.2002).
In these circumstances, both prejudice to the plaintiffs and waste of judicial resources are apparent. The plaintiffs have expended significant legal resources on litigating the case in this court. Had they been apprised of Horizon's defense at an earlier stage in the proceeding,[7] they might have sought OPM review sooner. Under the applicable regulations, a quest for reconsideration of the denial of a claim by the carrier must be brought within "6 months from the date of the notice to the covered individual that a claim (or a portion of a claim) was denied by the carrier." 5 C.F.R. § 890.105(b)(1). Appeals to the OPM must be made within 90 days after the notice of the denial of the reconsideration of the claim. § 890.105(e)(1). The "OPM may extend the time limit for a covered individual's request for OPM review when the covered individual shows he or she was not notified of the time limit or was prevented by circumstances beyond his or her control from submitting the request for OPM review within the time limit." § 890.105(e)(1)(iii). On this record, we cannot ascertain whether OPM would extend the time limits for the receipt of a request for OPM review for claims denials, some of which involve services performed over five years ago.
However, the defeat of Horizon's exhaustion defense on equitable grounds is complicated by the fact that the OPM is best suited to resolve the ultimate issue raised in this suit, that being whether the treatment rendered by the plaintiffs to FEHBP participants was "reasonable and necessary" within the meaning of the Plan. The OPM is the agency charged by Congress with interpreting and enforcing the insurance contracts with its carriers. If the OPM finds that the carrier incorrectly denied benefits, the carrier is contractually obligated to pay the benefits. 5 U.S.C. § 8902(j); St. Mary's Hospital v. Carefirst of Md., 192 F.Supp.2d at 386. OPM decisions about claims are entitled to deference by a reviewing court, which may only overrule the OPM decision if the decision is arbitrary or capricious. Nesseim v. Mail Handlers Ben. Plan, 995 F.2d 804, 807 (8th Cir.1993); Bridges v. Blue Cross & Blue Shield Ass'n, 935 F.Supp. 37, 45 (D.D.C.1996). The scheme of national uniformity of coverage for FEHBP participants would be disturbed if, in the first instance, judicial officers substituted their own judgment for that of the OPM in reviewing the denial of claims by carriers. In balancing the various considerations, the primacy of OPM review overshadows Horizon's failure to notice the FEHBP patients and providers of the appropriate appellate procedures.
*673 Even if Horizon's exhaustion defense is rejected, and the plaintiffs may bypass administrative remedies and obtain direct judicial review, the applicable FEHBA regulation specifies that suit be brought only against the OPM, and not the carrier. 5 C.F.R. § 890.107. The OPM has the authority to prescribe regulations to carry out the FEHBA pursuant to federal statute. 5 U.S.C. § 8913. Scholl v. QualMed, Inc., 103 F.Supp.2d 850, 853 (E.D.Pa.2000) ("Congress delegated authority to OPM to promulgate regulations implementing FEHBA."). It is accepted that "[i]f Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844-45, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). See also Stiver v. Meko, 130 F.3d 574 (3d Cir.1997). The plaintiffs do not assert that the regulation permitting suit to be filed only against the OPM is in any way "arbitrary, capricious, or manifestly contrary to the statute." In fact, the jurisdictional statement of the FEHBA provides federal courts with jurisdiction solely over suits against the United States.
The district courts of the United States have original jurisdiction, concurrent with the United States Court of Federal Claims, of a civil action or claim against the United States founded on this chapter.
5 U.S.C. § 8912. There is no jurisdictional authority offered to the federal courts to entertain suits under the FEHBA against carriers who contract with the OPM.
The OPM plays a "pivotal role . . . in the FEHBA scheme." Scholl v. QualMed, Inc., 103 F.Supp.2d at 855. Under the FEHBA, the OPM must contract with private carriers, and must interpret the plans to determine carrier liability in an individual case. 5 U.S.C. § 8902. The designation of OPM as the sole defendant in a suit to challenge the denial of a health benefits claim under the FEHBP is a component of the scheme designed to provide national uniformity of coverage for federal employees. St. Mary's Hospital v. Carefirst of Md., Inc., 192 F.Supp.2d at 390. See also Rievley v. Blue Cross Blue Shield of Tenn., 69 F.Supp.2d 1028, 1034 (E.D.Tenn.1999) (1998 Amendment to FEHBA furthers Congress'"goal of ensuring uniform provision of benefits to federal employees across the country.").[8]
I have found no basis to depart from the clear mandate of the regulation, that only the OPM may be a proper party defendant. The cited regulation clearly prohibits suit against the carriers or the carriers' subcontractors in lieu of the OPM. The quest for judicial review of the denial of claims under FEHBA against Horizon must be dismissed, without prejudice as to the merits of the plaintiffs' claims.
II. State Health Benefits Plan
Forty-three of the patients at issue were insured through the State Health Benefits Plan ("SHBP"), a health benefits plan for New Jersey state employees created by the State Health Benefits Commission. The New Jersey State Health Benefits *674 Program Act ("NJSHBPA") created the Commission to administer a program of comprehensive health care benefits for eligible public employees. See N.J.S.A. 52:14-17.25 et. seq. The Commission administers the SHBP through contracts with several insurers, including Horizon, under which the insurer provides the administrative services necessary to effectuate the actual delivery of health care benefits and the payment of claims for benefits. Pursuant to the Act, the Commission also has the authority to develop rules and regulations to aid in administering the plan. N.J.S.A. 52:14-17.27; 52:14-17.36. The regulations governing the SHBP are found in N.J.A.C. 17:9-1.1 et seq.
Plaintiffs contend, as they did with respect to the FEHBP, that the state insurance plan is governed by ERISA, and that Horizon is indebted to the plaintiffs for the medical care and treatment of Lyme disease provided to Horizon's insureds. Plaintiffs seek damages under ERISA as well as under state law breach of contract grounds.
A. ERISA
As with the federal insurance plan, ERISA does not apply to the State Health Benefits Plan. The SHBP is a governmental plan established by the State of New Jersey under N.J.S.A. 52:14-17.25 et. seq., to which ERISA does not apply. See 29 U.S.C. § 1003(b) and 1002(32). Plaintiffs' ERISA based claims must be dismissed.
B. State Law Claims.
Plaintiffs also assert breach of contract claims under state law. Horizon seeks dismissal of the plaintiffs' SHBP claims, contending that the plaintiffs failed to exhaust administrative remedies, and that the plaintiffs are collaterally estopped by the Initial Decision of an Administrative Law Judge in the case of Kagan v. State Health Benefits Commission, OAL Dkt. No. TYP 4151-99 (2001), from challenging the denial of Horizon's claims.
1. Exhaustion of Administrative Remedies.
The appeal process for SHBP claims decisions is governed by regulations promulgated by the State Health Benefits Commission. See N.J.A.C. 17:9-1.3. The appeal process for HMO disputed claims starts with a first level appeal to Horizon, under its grievance procedures. N.J.A.C. 17:9-1.3(b). The next level of appeal is presented to the State Health Benefits Commission. Members of a traditional plan or NJ PLUS may appeal directly to the Commission. N.J.A.C. 17:9-1.3(a). If a member disagrees with the Commission's decision, they may send a written appeal to the Commission. If the case involves solely a legal question, the Commission will prepare detailed findings of fact and conclusions of law that represent the Commission's "final administrative determination that may then be appealed to the Superior Court, Appellate Division." N.J.A.C. 17:9-1.3(d)(1). If the appeal involves a factual question, the case may be sent to the Office of Administrative Law for a hearing before an Administrative Law Judge, who will prepare an "Initial Decision" which the Commission may modify, adopt or reject. N.J.A.C. 17:9-1.3(d)(2). Upon the issuance of a Final Decision by the Commission, an appeal may be taken to the Superior Court of New Jersey, Appellate Division. See Murray v. State Health Benefits Comm'n, 337 N.J.Super. 435, 767 A.2d 509 (App.Div.2001).
The requirement of administrative exhaustion under the SHBP was addressed in *675 Burley v. Prudential Ins. Co. of Amer., 251 N.J.Super. 493, 598 A.2d 936 (App.Div. 1991). In Burley, Judge King held that the plaintiff was required to follow all administrative remedies prior to seeking relief in the courts. The plaintiff was a state employee, insured under the State Health Benefits Program, as administered by Prudential. Following the denial of portions of his claims by Prudential, the plaintiff brought suit against Prudential in the Superior Court of New Jersey. The Superior Court granted summary judgment to Prudential because the employee failed to exhaust her administrative remedies. On appeal, the court relied upon the benefits booklet for SHBP and upon N.J.A.C. 17:9-1.3 to affirm the trial court, noting that "[a]ll available and appropriate administrative remedies generally should be fully explored `before judicial action is sanctioned.'" Id. at 498, 598 A.2d at 939. The court transferred the matter to the SHBP for a hearing on the merits of the plaintiff's claim, without prejudice to any potential action at law against either Prudential or the SHBP.
Burley would dictate that Horizon may be granted summary judgment on SHBP claims, because the plaintiffs did not appeal the denial of their claims by Horizon to the Commission. Plaintiffs acknowledge the exhaustion requirement, but contend that because Horizon failed to notice the claimants of their rights to appeal when their claims were denied, Horizon cannot now assert the exhaustion remedy as a defense.[9]
Michael Dolich, plaintiffs' counsel, certified that out of all of the claims asserted in this adversary proceeding, he was able to "locate[ ] claims denial notices for only nine of the patients at issue." He stated further that: "None of the notices referred to the plan provision at issue. All but one of the notices fail to provide relevant documentation. Others provide no basis for the denial. And one even fails to advise of any right to appeal." Dolich Certif. # 2. Horizon has not contested these factual allegations.
While individual patients and providers did not receive appropriate claims denial notices from Horizon, information regarding appeals procedures was available to them. The New Jersey State Health Benefits Program Medical Plans Information Handbook ("Handbook")[10] specifies that appeals from the decisions of the carrier may be taken to the Commission, which may forward the matter to the Office of Administrative Law for recommended fact findings. The Commission's final decision is appealable to the Superior Court of New Jersey, Appellate Division. Handbook, at 28-99. As well, although the applicable SHBP regulations, N.J.A.C. 17:9-1.1 et seq., do not address the claims noticing requirements imposed upon the carrier, the right to appeal to the Commission from a carrier's decision, and the right to appeal from an adverse decision by the Commission are specified in N.J.A.C. 17:9-1.3. As to noticing the claimants of his/her appeal rights from an adverse Commission decision, the rule provides in pertinent part as follows:
(c) Notification of all Commission decisions will be made in writing to the member and the following statement shall be incorporated in every written notice setting forth the Commission's determination in a matter where such *676 determination is contrary to the claim made by the claimant or his or her legal representative:
"If you disagree with the determination of the Commission in this matter, you may appeal by sending a written statement to the Commission within 45 days from the date of this letter informing the Commission of your disagreement and all of the reasons therefor. If no such written statement is received within the 45-day period, this determination shall be considered final."
N.J.A.C. 17:9-1.3(c).
The consequence to the carrier of failing to promptly notify the claimant of a denial of a claim, and failing to notify the claimant about his appeal rights, was not set out in the regulatory scheme at the time the claims at issue in this case arose. Effective January 2, 2001, regulations were promulgated by the Department of Banking and Insurance pertaining to "Health Benefits Plans," N.J.A.C. 11:22-1.1 et seq., which apply to all carriers who provide health care coverage in New Jersey. Claim handling requirements for "Denied and disputed claims" are specified, including the time frame for notifying the covered person and the provider, and the provision of a toll free telephone number for the carrier or its agent, who may be contacted by the provider or covered person to discuss the claim. N.J.A.C. 11:22-1.6(a). Notably, subsection (b) provides that if "[a] carrier or its agent . . . does not provide the notice required by (a) above [it] shall waive its right to contest the claim for any reason other than the referral of the claim to the Office of Insurance Fraud Prosecutor in accordance with the carrier's Fraud Prevention and Detection Plan." N.J.A.C. 11:22-1.6(b). This regulation, waving the right of a carrier to contest a claim if the requisite notice of the denial is not sent to the patient and the provider, does not apply to the claims at issue in this case, because the claims arose before the regulation was effective. Nevertheless, the regulation underscores the significance of prompt and appropriate notice by the carrier of the denial of a claim, and of a subscriber's or provider's recourse in the event of the failure of such notice.
The New Jersey Supreme Court has held that while the exhaustion of administrative remedies is generally preferred, it is not an "indispensable precondition" to judicial action, Abbott v. Burke, 100 N.J. 269, 297, 495 A.2d 376, 391 (1985), and is not an absolute jurisdictional requirement. Borough of Matawan v. Monmouth County Bd. of Tax., 51 N.J. 291, 296, 240 A.2d 8 (1968). Exceptions to the doctrine exist "when only a question of law need be resolved; when the administrative remedies would be futile; when irreparable harm would result; when jurisdiction of the agency is doubtful, or when an overriding public interest calls for a prompt judicial decision." Abbott v. Burke, 100 N.J. at 298, 495 A.2d 376 (internal citations omitted) citing to Garrow v. Elizabeth General Hospital & Dispensary, 79 N.J. 549, 561, 401 A.2d 533 (1979) (collecting cases). None of the enumerated exceptions apply here. The ultimate issue of medical necessity presented here is particularly fact-sensitive, rather than pertaining only to a question of law. There is no showing that the Commission would reject the plaintiffs' claims,[11] or that *677 the plaintiffs would suffer irreparable harm by being required to present their proofs before the Commission rather than this court in the first instance. There is no doubt that the Commission is authorized to hear the disputed claim. And there is no demonstration of a compelling public interest calling for judicial review prior to the exhaustion of administrative remedies.
Where the relevant considerations to the exhaustion requirement "are in near-equipoise, . . . the court must weigh them carefully to find the proper balance." Abbott v. Burke, 100 N.J. at 298, 495 A.2d at 391. Here, on the one hand, Horizon failed to give timely and proper notice to SHBP participants about the reasons for the denial of their claims and about the steps to be taken to obtain review. The unfairness to the plaintiffs occasioned by this failure is mitigated by the fact that the Plan Handbook, which has been readily available to the plaintiffs, clearly reflects the administrative course for appealing a denial of claims by Horizon. More significantly, Dr. Lionetti is charged with actual knowledge of the appropriate administrative procedures because he testified before an Administrative Law Judge in the Kagan case.
On the other hand, the administrative remedy specified in the applicable regulation for claims denials, N.J.A.C. 17:9-1.3, places the Commission in the central role of fact-gathering and claims decision-making in the first instance. Statutorily, the Commission retains final authority and financial responsibility for the conduct of the SHBP.
The Commission has statutory authority to establish "such limitations, exclusions, or waiting periods as the commission finds to be necessary or desirable to avoid inequity, unnecessary utilization, duplication of services or benefits otherwise available . . ." N.J.S.A. 52:14-17.29(B). The Commission's contract with Blue Cross Blue Shield establishes the types of services and supplies that are covered as eligible services. Under N.J.A.C. 17:9-2.16, the Commission has adopted by reference all of the policy provisions in the contract "to the exclusion of all other possible coverages." No benefits may be paid unless they are "stipulated in the contracts held by the [Commission]." N.J.S.A. 52:14-17.29(B).
Murray v. State Health Benefits Comm'n, 337 N.J.Super. 435, 439-40, 767 A.2d 509, 511 (App.Div.2001). In reviewing claims and interpreting plan provisions, the Commission "must balance its obligations of meeting the health care needs of its members with a fiduciary obligation to make the program cost effective." Id. Judicial review of the Commission's claim determinations are
quite limited . . . [and] can overturn only those administrative determinations that are arbitrary, capricious, unreasonable, or violative of expressed or implicit legislative policies. We will also reverse administrative decisions that are unsupported by substantial, or sufficient, credible evidence in the record. . . . [W]e cannot substitute our judgment for that of the agency, even if we would have decided the case differently had we heard the evidence.
Id. at 442-43, 767 A.2d at 512.
On balance, I conclude that the plaintiffs' quest for the payment of medical services provided to SHBP patients can and should be considered in the first instance by the appropriate administrative agency, the Commission. There is no question that the issues of medical necessity and coverage under the SHBP "may be more effectively presented, comprehended, and assessed by a tribunal with the particular training, acquired expertise, actual experience, *678 and direct regulatory responsibility" for the program. Abbott v. Burke, 100 N.J. at 300, 495 A.2d at 393.
In reaching the conclusion that the plaintiffs must exhaust administrative remedies before they can access judicial review, I recognize that this litigation has been especially prolonged. Although Horizon raised the exhaustion defense in its initial pleadings, it waited to raise the issue as a basis to dismiss the plaintiffs' cause until shortly before the commencement of the trial. Nevertheless, I am convinced that the additional delay that may result from this decision is mandated by the statutory and regulatory scheme of the SHBP.[12]
The plaintiffs' claims arising under the SHBP will be dismissed without prejudice, subject to plaintiffs' opportunity to reopen this adversary proceeding as to SHBP claims following the exhaustion of administrative remedies.
2. Collateral Estoppel.
Alternatively, Horizon seeks summary judgment on the ground that plaintiffs should be collaterally estopped from litigating their SHBP claims, because the identical issues were litigated and determined before an Administrative Law Judge in the case of Kagan v. State Health Benefits Commission, OAL Dkt. No. TYP4151-99 (2001).[13] The Commission affirmed the Initial Decision by Final Decision dated June 22, 2001. See N.J.S.A. 52:14B10(c).
In Kagan, the plaintiff, Allan Kagan, received health insurance coverage through the SHBP. He was treated for Lyme disease by Dr. Lionetti, and received intravenous antibiotic therapy over an extended period of time. The therapy was administered without pre-certification from Blue Cross Blue Shield of New Jersey. Kagan's claim for coverage was denied by the N.J. Plus Appeals Committee, whereupon he appealed to the State Health Benefits Commission. The Commission forwarded the matter to the Office of Administrative Law for a plenary hearing. Dr. Lionetti testified at the hearing as an expert witness for Kagan, which testimony, in the opinion of the Administrative Law Judge, was "offered to support the payment of many thousands of dollars to himself."
The issue addressed in the Initial Decision is whether the charges incurred by Kagan for intravenous antibiotic therapy beyond 28 days rendered by Dr. Lionetti are covered under the State Health Benefits Plan. Generally, the SHBP does not cover "charges for services or supplies that are not medically needed." A service is considered needed if, among other things, "the prevailing opinion within the appropriate *679 specialty of the United States medical profession is that it is safe and effective for its intended use, and that its omission would adversely affect the person's medical condition." Kagan at 27 (citing to the 1996 SHBP Handbook). In 1997, the Commission adopted a formal policy for Lyme disease intravenous antibiotic therapy coverage for all SHBP members. The policy specified that certain stages of Lyme disease may be treated with up to 30 days of intravenous antibiotic therapy, with the opportunity to approve extended intravenous therapy beyond 30 days under limited circumstances. As well, the policy required certain tests, including a spinal fluid analysis, to be done as a predicate to coverage for intravenous antibiotic therapy beyond 30 days. No such analysis was conducted on Kagan.
Administrative Law Judge Duncan concluded on three grounds that Kagan had not established entitlement to coverage under the SHBP for the Lyme disease treatment he received. First, she accepted the testimony of the expert testifying on behalf of the Commission, Dr. David J. Herman, that the course of treatment rendered by Dr. Lionetti was not medically reasonable and necessary in accordance with the prevailing opinion of the United States medical professionals treating Lyme disease. "Although Dr. Lionetti, and others, believe in the benefits of long-term antibiotic therapy, the State Health Benefits Commission is not required to pay for services rendered pursuant to unsubstantiated minority theories." Kagan at 29. Second, she concluded that the treatment Kagan received from Dr. Lionetti was not in accord with the Plan's Lyme disease treatment policy, which required a spinal fluid analysis, which proscribed the diagnostic tests utilized by Dr. Lionetti, and which proscribed some of the drugs administered by Dr. Lionetti to Kagan. Third, Judge Duncan concluded that the evidence failed to establish that the symptoms Kagan continued to experience when he was treated by Dr. Lionetti were attributable to active Lyme disease requiring additional antibiotic therapy.
Under New Jersey law, collateral estoppel applies where the movant can show that:
(1) the particular issue to be precluded is identical to the issue decided in the previous proceeding;
(2) the issue was actually litigated in the prior action, i.e., there was a full and fair opportunity to litigate the issue in the prior action;
(3) a final judgment on the merits was issued in the prior proceeding;
(4) the determination of the issue was essential to the prior judgment; and
(5) the party against whom preclusion is asserted was a party to or in privity with a party to the earlier proceeding.
Monek v. Borough of South River, 354 N.J.Super. 442, 454, 808 A.2d 114, 120-21 (App.Div.2002); Barker v. Brinegar, 346 N.J.Super. 558, 567, 788 A.2d 834, 839 (App.Div.2002). See also Delaware River Port Auth. v. Fraternal Order of Police, 290 F.3d 567, 573 (3d Cir.2002) (applying New Jersey law); In re Estate of Dawson, 136 N.J. 1, 641 A.2d 1026 (1994). "As contrasted with res judicata, which requires an identity of the cause of action, collateral estoppel bars relitigation of the same issues in suits that arise from different causes of action." Id. at 453-54, 808 A.2d at 120.
Applying collateral estoppel elements to the circumstances in this case presents several problems. Because Judge Duncan denied Kagan's claim for reimbursement on several grounds, some of which pertained to the peculiar course of treatment received by Kagan, I cannot determine *680 that Judge Duncan's resolution of the prevailing opinion on the appropriate use of intravenous antibiotic therapy for the treatment of Lyme disease was essential to the denial of coverage in the Initial Decision. Most notably, the record does not support the conclusion that Dr. Lionetti and his companies, including LymeCare, Inc. and Lyme Disease Treatment Center, Inc., were either a party to the proceeding before the Office of Administrative Law or in privity with Kagan in the course of the proceeding.
Under New Jersey law, the court will find privity when "the party is a virtual representative of the non-party, or when the non-party actually controls the litigation." Collins v. E.I. DuPont de Nemours & Co., 34 F.3d 172, 176 (3d Cir.1994).
"Generally, one person is in privity with another and is bound by and entitled to the benefits of a judgment as though he was a party when there is such an identification of interest between the two as to represent the same legal right, or if a person who is not a party controls or substantially participates in the control of the presentation on behalf of a party, Restatement, Judgments 2d, § 39, or if a person who is not a party to an action is represented by a party, including an `official or agency invested by law with authority to represent the person's interests.'"
Id. (quoting Moore v. Hafeeza, 212 N.J.Super. 399, 515 A.2d 271, 273 (Ch.Div.1986)).
Virtual representation does not mean merely that someone in the suit serves the interests of the person outside the suit. It requires a relationship by which the party in the suit is the legally designated representative of the nonparty. Id. The Collins court observed that the "identity of interests" test found by some New Jersey courts to be sufficient in certain contexts to create privity, see, e.g., Moore v. Hafeeza, 212 N.J.Super. 399, 515 A.2d 271, is "in significant tension with the New Jersey cases finding that similarity of interests do not create privity" in the absence of a pre-existing legal relationship. Id. at 178, n. 2.
In this case, there is no support for the proposition that Kagan was the legally designated representative of Dr. Lionetti or his companies, LymeCare, Inc. and Lyme Disease Treatment Centers, Inc. The fact that Dr. Lionetti held a similarity of interests with Kagan in getting paid for services rendered, that he testified at the hearing, and that the same attorney represented Kagan and Dr. Lionetti at various times[14] did not make Kagan Dr. Lionetti's legally designated representative. In Collins, for instance, neither the fact that the plaintiff had the same interest as the prior plaintiffs, nor the fact that the plaintiff had the same attorney as the plaintiffs in the first suit made preclusion appropriate. Collins, 34 F.3d at 177-78. And in Marshak v. Treadwell, 240 F.3d 184, 196 (3d Cir.2001), the fact that the counter-claimant testified in the first case and had an interest in the outcome did not preclude the counter-claimant from pursuing the subsequent litigation.
Nor is there sufficient evidentiary basis in the record to support the proposition that Dr. Lionetti controlled the Kagan litigation. As noted above, Laurent W. Metzler, Esq., certified that his firm, Metzler *681 and DeSantis LLP, represented Allen Kagan in his quest to recover payments from the State Health Benefits Commission, that his partner, Glenn DeSantis, Esquire, tried the case, and that Dr. Lionetti "had no control over this litigation." Metzler cert. at 2. Horizon has not otherwise disputed this statement.
Even if the elements of collateral estoppel were established on this record, the application of the collateral estoppel doctrine is discretionary and must be applied equitably, not mechanically. Azurak v. Corporate Property Investors, 347 N.J.Super. 516, 523, 790 A.2d 956, 961 (App.Div.2002).
The factors favoring issue preclusion include: "conservation of judicial resources; avoidance of repetitious litigation; and prevention of waste, harassment, uncertainty and inconsistency." Those disfavoring preclusion include: the party against whom preclusion is sought could not have obtained review of the prior judgment; the quality or extent of the procedures in the two actions is different; it was not foreseeable at the time of the prior action that the issue would arise in subsequent litigation; and the precluded party did not have an adequate opportunity to obtain a full and fair adjudication in the prior action.
Pace v. Kuchinsky, 347 N.J.Super. 202, 216, 789 A.2d 162, 171 (App.Div.2002) (Citations omitted.).
Here, the factors clearly disfavor preclusion. Neither Dr. Lionetti nor his corporate counterparts could have obtained review of the Kagan decision. The Kagan case concerned one patient with a particular history and course of treatment. This proceeding concerns over 40 patients, each with variations in their conditions and in the treatment they received. The issue of Horizon's conduct in claims handling was not raised in the Kagan case. Because Horizon was not a party in the Kagan case, there is no basis to claim any unfairness or harassment to Horizon in allowing the claims to proceed. Most significantly, the plaintiffs in this action did not have an adequate opportunity to obtain a full and fair adjudication in the prior action. For instance, as plaintiffs argue in their brief, "[w]hile Mr. Kagen [sic] may have lacked the incentive or resources to find and engage the experts necessary to prevail in his single action, the Plaintiffs here do have that incentive and, indeed, have made that effort." Plaintiffs' Brief in Opposition at 29.
I conclude that plaintiffs are not collaterally estopped from litigating their SHBP claims.
III. Self Funded Plans
The plaintiffs also seek payment from Horizon for services rendered to patients who had health insurance coverage through the self-funded plans of Local 54 and Local 68. It is not disputed that ERISA requirements apply to both of these plans. Horizon challenges the plaintiffs' standing, as medical providers, to seek compensation from Horizon under these ERISA qualified plans.[15] Horizon also challenges plaintiffs' cause of action grounded on state law contract claims, claiming that ERISA completely preempts such claims.
A. Standing.
Horizon contends that the plaintiffs lack standing under 29 U.S.C. § 1132, *682 which provides that a civil action may be brought by a plan participant, beneficiary, or fiduciary, or by the Secretary of Labor. Horizon maintains that health care providers are neither participants, nor beneficiaries, directing the court's attention to Cameron Manor, Inc. v. United Mine Workers of America, 575 F.Supp. 1243, 1245-46 (W.D.Pa.1983); Allergy Diagnostics Lab. v. Equitable, 785 F.Supp. 523, 527 (W.D.Pa.1991), and Health Scan, Ltd. v. Travelers, Ins. Co., 725 F.Supp. 268 (E.D.Pa.1989).
Plaintiffs contend that Horizon's citations refer to "a few aberrant cases, far outside of the mainstream", and that the majority of courts recognize that providers can bring ERISA claims on behalf of patients, particularly where, as here, the patients have assigned their entitlement to receive benefits to the provider. See, e.g., Tango Transp. v. Healthcare Fin. Servs. LLC, 322 F.3d 888 (5th Cir.2003); Charter Fairmount Inst., Inc., v. Alta Health Strategies, 835 F.Supp. 233 (E.D.Pa.1993);
In this case, plaintiffs obtained an assignment of benefits for each of the patients treated.[16] To date, the Third Circuit has not directly addressed the question of whether or not an assignee has standing under ERISA. The plaintiffs are correct that the overwhelming weight of authority among other circuits on the issue of the standing of medical provider assignees to sue for benefits under ERISA favors such standing. See, e.g., Tango Transport v. Healthcare Financial Services, supra; I.V. Servs. of Am., Inc. v. Trustees of Am. Consulting Eng'rs Council Ins. Trust Fund, 136 F.3d 114, 117 n. 2 (2d Cir.1998); Cagle v. Bruner, 112 F.3d 1510, 1515 (11th Cir.1997). "Numerous district courts in this circuit have held that health care providers have standing to sue under § 1132(a)(1)(B) where there has been an assignment of rights under the plan." Zaslow v. Miles, 1998 WL 855496, *2 (E.D.Pa. Dec.9, 1998) (citing to Charter Fairmount Institute, Inc. v. Alta Health Strategies, 835 F.Supp. 233, 239 (E.D.Pa.1993); Northwestern Inst. of Psychiatry, Inc. v. Travelers Ins. Co., 1992 WL 236257 (E.D.Pa.1992); Winter Garden Med. Ctr. v. Montrose Foods Prods., 1991 WL 124577 (E.D.Pa.1991); and Bryn Mawr Hosp. v. Coatesville Elec. Supply Co., 776 F.Supp. 181, 184 (E.D.Pa.1991)). Horizon has not cited any specific bar to assignment in the self-funded plans under consideration here. I join with the majority view to conclude that the plaintiffs have standing to sue Horizon under ERISA provisions.
B. Preemption of State Law Contract Claims.
In their Third Amended Complaint, as it pertains to Horizon, the plaintiffs seek reimbursement from Horizon "for medical care and treatment of Lyme disease provided to its insureds" not only on ERISA grounds, but also on state law breach of contract grounds. Third Amended Complaint at 11. Horizon accurately contends that because the plaintiffs' claims are completely preempted by ERISA, the plaintiffs' state law claims must be dismissed.
As noted above, Section 502(a) of ERISA allows for civil actions to be brought "by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). "[A]n action to recover *683 benefits, which challenges an administrative decision regarding whether a certain benefit is covered under an ERISA plan" is completely preempted under ERISA. Difelice v. Aetna U.S. Healthcare, 346 F.3d 442, 446-47 (3d Cir.2003). An action challenging eligibility for benefits may not be the subject of a state action. Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266 (3d Cir.2001). There is no question that in this case, the plaintiffs challenge Horizon's denial of benefits under the ERISA-controlled self-funded plans. The plaintiffs' state law claims pertaining to the self-funded plans must be dismissed.
To recap, I conclude the following:
1. As to FEHBP claims:
a. ERISA does not apply.
b. State law contract claims are pre-empted.
c. The plaintiffs must exhaust administrative remedies prior to judicial review.
d. Horizon is not a proper party defendant.
Summary judgment is granted to Horizon to dismiss the plaintiffs' FEHBP claims, without prejudice to consideration of the merits of the plaintiffs' claims.
2. As to SHBP claims:
a. ERISA does not apply.
b. The plaintiffs must exhaust administrative remedies prior to judicial review.
c. The plaintiffs are not collaterally estopped from litigating their SHBP claims.
Summary judgment is granted to Horizon to dismiss the plaintiffs' SHBP claims, without prejudice to consideration of the merits of the plaintiffs' claims.
3. As to Self-Funded Plans:
a. The plaintiffs have standing under ERISA to sue Horizon.
b. The plaintiffs' state law contract claims against Horizon are pre-empted by ERISA.
Partial summary judgment is granted to Horizon, dismissing the plaintiffs' state law contract claims.
Horizon's counsel shall submit a form of order in conformance with this opinion.[17]
NOTES
[1] On October 29, 1999, the case was converted to Chapter 7 and Steven R. Neuner, Esq. was appointed as the Chapter 7 trustee.
[2] References to "LymeCare" or the "debtor" herein will include the Chapter 7 trustee, who, as plaintiff in this adversary, stands in the shoes of the Chapter 7 debtor, and will also include the co-plaintiff, Lyme Disease Treatment Center, Inc., an affiliated company.
[3] The plaintiffs argue that there should be no differentiation between the various plans as to compensability of claims, because Horizon never distinguished between the plans concerning eligibility for treatment, or methods for appealing the denial of claims. The plaintiffs' argument must be rejected. The applicable federal and/or state statutes and regulations governing each plan cannot be disregarded.
[4] While Horizon failed to give timely notice to insureds about the denial of their claims and about appellate procedures, all FEHBP participants received Blue Cross and Blue Shield Service Benefit Plan ("Plan") booklets, which explained that any disputed claim must be appealed to the OPM and that the Plan participant or a person acting on his/her behalf "may not bring a lawsuit to recover benefits on a claim for treatment, services, supplies, or drugs covered by [the] Plan until [the participant has] exhausted the OPM review procedure." See Service Benefit Plan at 37-38.
[5] Analogy is sometimes drawn between issues arising under ERISA and issues arising under the FEHBA. See, e.g., Berry v. Blue Cross of Washington & Alaska, 815 F.Supp. 359 (W.D.Wash.1993).
[6] Other cases cited by plaintiffs to defeat Horizon's exhaustion argument are not applicable here. Each of the cases relies on the futility exception to the exhaustion requirement. Fallick v. Nationwide Mutual Ins. Co., 162 F.3d 410 (6th Cir.1998); Berger v. Edgewater Steel Co., 911 F.2d 911 (3d Cir.1990), and Berry v. Blue Cross of Washington & Alaska, 815 F.Supp. 359 (W.D.Wash.1993). Here, there is no showing that an administrative appeal before the OPM would be futile, because this record does not reflect any involvement by the OPM in this dispute to date.
[7] The applicable FEHBP Service Benefits Plans, which clearly identify the appeals process for denial of claims, was sent to the plaintiffs' counsel at an early stage of the litigation. However, Horizon did not draw plaintiffs' attention to the claims provision in the Plans.
[8] Plaintiffs' reliance on the Rievley case to overcome the mandate of the regulation, that only the OPM and not the carrier may be sued, is misplaced. In Rievley, the plaintiff, an FEHBP insured, sued the carrier directly in state court, whereupon the action was removed to federal court. The plaintiff's motion to remand the case back to state court was denied. The court never reached the issue of the proper defendant.
[9] Horizon raised the exhaustion of administrative remedies defense in paragraphs 18, 19 and 20 of its affirmative defenses to the plaintiffs' complaint.
[10] Several annual additions to the Handbook were presented to the court, including the 1996 Handbook for all SHBP members. The Handbook references are taken from Part One of the 1996 Handbook providing General Information for SHBP members.
[11] In the case of Kagan v. State Health Benefits Commission, AOL Dkt. No. TYP 4151-99 (2001), the Initial Decision by an Administrative Law Judge rejected Dr. Lionetti's claim for reimbursement as to Alan Kagan on various grounds. We do not know the Commission's response to the decision. See discussion, infra.
[12] At oral argument on Horizon's summary judgment motion, I raised the doctrine of primary jurisdiction to explore whether the statutory and regulatory framework of SHBP requires a threshold determination of coverage for plaintiffs' claims under the applicable health benefits plans by the State Health Benefits Commission prior to judicial review. See, e.g., R.J. Gaydos Ins. Agency, Inc. v. National Consumer Ins. Co., 168 N.J. 255, 773 A.2d 1132 (2001). Submissions were received from both parties. While the doctrine of primary jurisdiction serves purposes similar to the doctrine of administrative exhaustion, Abbott v. Burke, 100 N.J. at 300, n. 5, 495 A.2d at 393, it is now apparent that the focus here is on the issue of exhaustion, because the regulatory scheme affords jurisdiction for review of claims denials to the Commission. See also MCI Telecommunications Corp. v. Teleconcepts, Inc., 71 F.3d 1086 (3d Cir.1995), cert. denied, 519 U.S. 815, 117 S.Ct. 64, 136 L.Ed.2d 25 (1996).
[13] Plaintiffs' contention that Horizon failed to plead collateral estoppel is rejected. In its Thirteenth Affirmative Defense, Horizon specifically raised the estoppel issue.
[14] At the hearing, Kagan was represented by Glenn DeSantis, Esq. Mr. DeSantis has represented Dr. Lionetti on a number of matters, and initially represented the debtor in this adversary proceeding, but withdrew his appearance during the earlier stages of this litigation. His partner, Laurent W. Metzler, certified that during the Kagan case, Lionetti had no control over the litigation.
[15] On this summary judgment motion, Horizon has withdrawn its contention that it did not act as an ERISA fiduciary in administering the selffunded plans. Horizon concedes that the plaintiffs have raised a factual issue regarding Horizon's discretionary powers under those plans which must be resolved at trial.
[16] On Horizon's first summary judgment motion, I determined that under New Jersey law, the anti-assignment clause in the various Horizon plans presented are valid and enforceable. That ruling does not apply to medical plans governed by ERISA and FEHBP requirements, which preempt state law.
[17] Several issues raised by Horizon in its summary judgment motion were resolved prior to the issuance of this opinion, as follows:

a. The parties apparently agree that except for a factual dispute about a negotiated rate for designated services performed by the plaintiffs, which dispute is preserved for trial, Horizon is entitled to summary judgment on the issue of damages.
b. Horizon is entitled to summary judgment to confirm that this court's prior ruling validating anti-assignment clauses under New Jersey state law, where no federal preemption is implicated, applies not only to LymeCare, Inc., but also to Lyme Disease Treatment Center, Inc.